### JOE B. WARD et al. v. STATE.
No. A-4406.   Opinion Filed Aug. 23, 1924.
(228 Pac. 498.)

(Syllabus.)

1. **Witnesses—Requiring Accused in Presence of Jury to Put on Coat Violative of Constitutional Privilege Against Self-Incrimination.** The appellants were charged and convicted of the crime of manufacturing intoxicating liquor. During a search of the premises where the liquor and liquor still was found, a mackinaw coat was also found not far distant from the still. The appellant Noble was a witness in his own behalf, and during his cross-examination the county attorney handed the witness this coat and asked him to put it on. Appellant objected, and the court overruled the objection and required him to put on the coat in the presence of the jury. After appellant had placed the coat on his person, the county attorney remarked, "The coat found at the still fits the defendant like the paper on the wall." Held, that the action of the trial court in requiring the defendant when a witness to put the coat on in the presence of the jury violated his constitutional right not to give incriminating evidence against himself.

2. **Same—Constitutional Provision Liberally Construed in Favor of Personal Rights.** The provision of the state Constitution that no person shall be compelled to give evidence which will tend to incriminate him is so sacred, and the pressure towards its

relaxation so great when suspicion of guilt is strong and the evidence weak and obscure, that it is the duty of courts liberally to construe the prohibition in favor of personal rights, and to refuse to permit any steps tending toward their invasion.

3. **Witnesses—Impeachment by Showing Former Conviction—Scope of Evidence.** The appellant Ward became a witness in his own behalf, and on cross-examination he was asked if he had ever been convicted for violating any of the laws of the state. His answer was in substance a denial of any such conviction. Thereupon, over the objection of such appellant, the county attorney was permitted to dictate into the record a statement, in the presence and hearing of the jury, that the said Ward had previously been convicted in another county of the violation of the prohibitory liquor laws, giving in substance the evidence, pro and con, which led to such prior conviction. Held, first, that a witness may be impeached by a showing of his former conviction of any offense against the laws of this state; second, that where the witness denies such conviction the impeaching evidence must be limited alone to the proof of such conviction; third, that it is not permissible to prove the facts in evidence in the former trial.

4. **Disposition of Cause.** This is a closely contested case on the facts, the conviction being based entirely on circumstantial evidence of a weak and unsatisfactory nature; the errors discussed in the opinion and covered by the foregoing paragraphs of this syllabus are deemed sufficient to require a reversal of the judgment as to each appellant.

Appeal from County Court, Dewey County; W. A. Carlton, Judge.

Joe B. Ward and another were convicted of the unlawful manufacture of intoxicating liquor, and they appeal. Reversed.

Hoyt & Butler, for plaintiffs in error.

The Attorney General, for the State.

MATSON, P. J. On the 15th day of March, 1922, the county attorney of Dewey county filed an information in the county court of said county charging the plaintiffs in error, Ward and Noble, hereinafter referred to as defendants, with having on or about the 13th day of October, 1921, unlawfully,

willfully, wrongfully, and intentionally made and manufactured by a process of distillation, by means of a liquor still, utensils, and mash, and intoxicating liquor, to wit: homemade whisky, capable of being used as a beverage, contrary to the form of the statutes, etc. The defendants were arrested and placed under a bond of $750 for their appearance at the April term of court. On April 3, 1922, the cause was called for trial, a jury impaneled, and the evidence of each side adduced. The jury returned a verdict of guilty, but failed to agree on the punishment, and the court imposed a fine of $400 and a jail sentence of four months against each defendant. The defendants moved to set the verdict aside and for a new trial, which motions were overruled and exceptions saved.

Among the errors assigned are the following: First, that the trial court erred in requiring the defendant Noble, while testifying as a witness in his own behalf in open court and in the presence of the jury, to put on a coat or mackinaw found in the neighborhood of where certain parties, who were officers searching, had found a still, mash, and whisky in Dewey county, Okla., near the bank of the North Canadian river on the 13th day of October, 1921. Secondly, that the trial court erred in permitting the state's attorney as part of the cross-examination of the defendant Ward, and for the purpose of impeachment, to recite into the record, in the presence of the jury, certain evidence which led to the conviction of said Ward of another offense tried in Major county, Okla., in December, 1921; all over the objection and exception of the defendants. Other errors are assigned, but in view of the disposition made of this appeal we deem it unnecessary to consider them.

The evidence on the part of the state is entirely circumstantial, and while it is apparent from the evidence that

somebody was engaged in the unlawful manufacture of whisky at the time and place complained of, the circumstances tending to connect these defendants with this manufacture, excluding the evidence hereinafter held to have been inadmissible, do not meet the requirements of the rule that circumstantial evidence, in order to be sufficient to convict, must exclude every reasonable hypothesis other than that of guilt of the defendant.

Relative to the first error above assigned, we find from the record that a certain coat or mackinaw was found by the searching officers on the date that it was alleged this crime was committed in the woods near where the liquor still was found. When the defendant Noble was a witness in his own behalf, the county attorney on cross-examination handed the witness this coat and asked him to put it on. Counsel for the defendant objected to the evidence as being incompetent, irrelevant, and immaterial, and the court overruled the objection and required the defendant to put on the coat in the presence of the jury. To this action of the trial court, counsel for the defendant excepted. After the defendant had placed the coat on his person, the prosecuting attorney remarked: "The coat found at the still fits the defendant like the paper on the wall." Counsel for the defendant then moved that the court strike such statement from consideration of the jury, which motion was overruled and excepted to.

It is here contended that this action on the part of the trial court violated the defendant's constitutional right as a witness, in that it required him to produce evidence that tended to incriminate him.

We think this contention is well founded.

The protection offered by the constitutional provision against self-incrimination is peculiarly a protection to wit-

nesses. In this case the defendant at the time of being required to put on the coat was a witness, and the demonstration of the fit of the coat on the body of the defendant was required to be made in the presence of the jury during the progress of the trial. In other words, the defendant Noble was required against his objection to make a demonstration of the fit of the coat for the jury's observation as a connecting link against him in the commission of the offense. Without this connecting link, the other circumstantial evidence is meager and unsatisfactory. Further, it appears that the prosecuting officer was permitted, over defendant's objection and exception, to express his opinion ''that the coat fits the defendant like the paper on the wall.'' This remark was made clearly for the purpose of prejudicing the defendant before the jury at the time he had the coat on, and should have been excluded by the trial judge and the jury admonished not to consider it.

In the case of Gore v. State, 25 Okla. Cr. 214, 219 Pac. 153, it was held:

''Evidence of the taking of the shoes from an accused person under arrest, charged with murder, for the purpose of ascertaining whether they correspond to the tracks found near the place of the homicide under the circumstances here, may be introduced by the state, over the objection of the accused that evidence so obtained is in violation of his constitutional right to immunity from being compelled to give incriminating evidence against himself.''

The distinction between the Gore Case and this case is that in the Gore Case the defendant was not a witness, while in this case the compulsion complained of was against the defendant as a witness.

In 28 R. C. L. p. 436, par. 23, on the subject here treated, the following appears:

"The comparison of footprints is frequently resorted to as a means of identifying the guilty party, and there is no doubt but that it is competent for a witness to testify that he has fitted the shoes of the accused in tracks found near the scene of the crime, and that they correspond therewith; or that he has measured tracks made by the accused or by the shoes of the accused, and tracks found near the place where the crime was committed, and that the measurements correspond. Indeed, it is competent to bring a box of sand before the jury in which impressions of the defendant's boots have been made for the purpose of comparing them with footprints seen near the place of the crime. Where the accused voluntarily makes footprints beside those found on the ground after the commission of a crime, a witness may testify that he measured the two sets of tracks and that they were the same. 'The refusal of an accused to make tracks for the purposes of comparison, however, is not admissible in evidence as a fact against him; nor can he, in the view of some courts, be compelled to make impressions of his feet for comparative purposes. However, there is authority directly opposed to this. Thus, it has been held that a person accused of crime may be compelled to surrender his shoe for the purpose of permitting it to be compared with tracks found in the snow near the place where the crime was committed, and witnesses may be allowed to testify as to the result of such comparison; and testimony has been admitted as to the comparison of footprints made under compulsion by an accused with those found near the scene of the crime for which he is on trial. A defendant taking the stand in his own behalf cannot be required, against objection, to try on a shoe to determine whether tracks found at the scene of the crime are his; nor can he be required, if he objects, to measure the shoe after putting it on."

The right intended to be provided by the constitutional provision that no person shall be compelled to give evidence which will tend to incriminate him is so sacred, and the pressure towards its relaxation so great when the suspicion of

guilt it strong and the evidence weak and obscure, that it is the duty of the courts liberally to construe the prohibition in favor of personal rights, and to refuse to permit any steps tending toward their invasion.

While the decisions do not appear to be altogether in accord on this subject, we think a clear distinction should be made between the defendant as such and between the defendant as a witness. The prohibition was intended for the protection of witnesses, and as such it should receive a more liberal construction in favor of witnesses. The difference is this, that when such comparisons and experiments are made outside of court, the evidence thereto falls from the lips of witnesses other than the defendant. The production of such evidence, therefore, and the testimony thereto, is not that of defendant but of other witnesses; while, on the other hand, if the defendant is required against his objection in open court, in the presence of the jury, to make such experiments and comparisons, no extraneous evidence is required, and the constitutional prohibition is thereby violated. Certainly it is against the spirit of this prohibition to compel this defendant in open court and in presence of the jury to put on a coat which will serve directly to connect him with the commission of the crime.

That the errors here complained of were prejudicial to the defendant Noble we think is supported by the weight of the better-reasoned authorities, among which, in addition to the foregoing, are the following: People v. Mead, 50 Mich. 228, 15 N. W. 95; Gillespie v. State, 5 Okla. Cr. 546, 115 Pac. 620, 35 L. R. A. (N. S.) 1171, Ann. Cas. 1912D, 259.

We now proceed to consider the second assignment of error above referred to. When the defendant Ward was on the witness stand, he was asked on cross-examination if he

had ever been convicted by a jury for violating any of the laws of this state. His answer was in substance a denial of any such conviction.

In connection with this cross-examination, the prosecuting officer was permitted to dictate into the record in the presence and hearing of the jury the following:

"At the request of the defendant, Joe B. Ward was prosecuted in Major county by a jury on the charge of transporting intoxicating liquor. The case was tried in December, 1921, term of county court, wherein the jury returned a verdict of guilty. The defendant Joe B. Ward will agree that at the time the officers swore a warrant and made the arrest he was transporting in a Ford truck liquor contained in a half-gallon fruit jar, this jar was standing in the bottom of the truck, and officer hauled the same into Fairview, a distance of about 4½ miles, and the officer managed to hold this half-gallon jar in one hand and drive the Ford truck with the other, and arrived at Fairview with approximately one ounce and one-half of the liquor, which further discloses that considerable liquor had run through the floor boards of the Ford truck. In the trial and conviction of Joe B. Ward, it was found that it was not intoxicating liquor, but that it was raisin wine, and this can be witnessed by Percy Noble, F. Chapman, and W. O. Whitstone, all who swore that they had tested of liquor and that it was not intoxicating. However, the evidence of the state was the stronger, and the jury delivered a verdict of 'guilty as charged in the information.'"

The previous holdings of this court are to the effect that a witness may be impeached by a showing of his former conviction of any offense against the laws of the state. Hendricks v. State, 23 Okla. Cr. 18, 212 Pac. 330, and authorities cited.

It is the fact of the former conviction that taints the witness' credibility, not the circumstances of such conviction.

Therefore the proof must be limited alone to proof of such conviction. The best evidence thereof is the record of such conviction. Under no circumstances is it ever permissible to prove the facts in evidence in the former trial. Such an issue is collateral to the inquiry—no inquiry into the guilt or innocence of the witness of the former offense can be had, the record of conviction being conclusive evidence of guilt. Wigmore on Evidence, vol. 2, § 980.

To permit the prosecuting officer to dictate the foregoing statement into the record as part of the trial of this case was clearly erroneous and prejudicial to the substantial rights of the defendant Ward.

The conviction as to each defendant is therefore reversed.

BESSEY and DOYLE, JJ., concur.