## SAM SCHRADER v. STATE.

No. A-5711. Opinion Filed June 16, 1928.
(268 Pac. 325.)

Ben F. Williams, for plaintiff in error.

George Short, Atty. Gen., and Leverett Edwards, Asst. Atty. Gen., for the State.

DAVENPORT, J. The plaintiff in error, hereinafter referred to as the defendant, was charged by information in the district court of Cleveland county with the crime of assault with intent to kill. A jury was impaneled, and, after hearing the evidence, returned a verdict of guilty of assault to do bodily harm, and his punishment fixed at imprisonment in the state penitentiary for two years. Motion for new trial was filed, considered, and overruled, and defendant reserved his exception. From the judgment and sentence the defendant appeals.

The testimony on behalf of the state is in substance as follows: Verne Chadwell testified:

That he knew the defendant. That he did not know whether or not he was married. That Mr. Schrader had been coming occasionally and talking with his sister of about 15 years of age. The afternoon of the alleged trouble he received information that some one was out in front and wanted to see him. "When I

came out of the house, I saw Schrader and another fellow in a car; I went out, and when I got up to the car close enough to see he had a gun in his hand, and I asked him what he had the gun for. He said, 'I heard you were going to kill me'; and I said, "If I had made any threat like that I would have got me a gun and done it'; I said, 'If you are a man, you will come out on the road somewhere and we will fight it out'; he said that he did not want me to beat him up. After I said that I told him, 'Now I am going to make a threat'; that if I ever saw him down at the house or talking to my sister I would kill him; he said, 'How about working down at the work; you can't stop me down there'; I said, ' I could not hold him,' but if I caught him talking to her or coming down there I would kill him; he said, 'I don't believe you can,' or, 'I don't believe you will stop me,' and he raised up his gun then. The gun was pointed toward me when he raised his arm. Before he raised it he was holding it in his hand. I was leaning on the car door. I took the gun out of his hand and turned it over to the officers. The pistol was loaded with two 45 automatic shells. The defendant looked to me like he was drunk. I think he was drunk. I don't know whether defendant had received information not to come to my house any more; I never talked to him myself."

On cross-examination witness stated:

He lived outside the corporate limits of Norman. He knew defendant was a soldier located over in Norman; never had any words with the defendant before this afternoon. "I saw the car after I stepped out of the door onto the porch. My mother told me some one wanted to see me. The car was on what was called the parking space. Some one was in the car with him. I don't know his name. They were in a Ford roadster. My sister was standing behind me when I went up to the car; was probably about five feet from the car when I saw the gun. I spoke first, and said, 'What you got that gun for?' He said, 'I heard you had been talking, making threats to kill me;' and I told him if I had I would have got me a gun and done it; I said that if he were a man with anything to him he would come out somewhere and fight it out, leaving the gun at home. When I talked to him, I was leaning on the car door close to him. He said he

did not want me to beat him up; still had the gun in his hand. I told him I would make a threat if he ever come down to the .house, if I ever caught him talking to my sister, I would kill him; I was referring to my youngest sister. He said, 'I don't believe you can stop me,' and raised his gun. He had the gun in his hand all the time. Defendant was sitting on the right-hand of the car when I come out to it. Defendant said he did not want me to come down to where he was working on the road and beat me up. Mr. Schrader got back to the wheel as the other fellow said he could not drive a car and drove away. In about 15 minutes they come back. Defendant was setting in the car about 100 yards from our house. Later on the officers come and arrested him. Hoard came down to the house and wanted us to give the pistol back to him, saying it belonged to the army."

Velma Chadwell, called as a witness, stated:

That she was a sister of Verne Chadwell. That the evening of the alleged trouble defendant drove up and honked his horn and "I got up and went to see who was there; I went out of the house and talked with him. He said he heard I wanted to see him, and I told him yes, I wanted to tell him what I thought about him; and he replied it would do no good for me to bawl him out, 'Tell Verne to come out here.' I went in and told my mother. Verne was informed he was out there and came out to the car. I saw the controversy over the pistol. When I first saw it, Mr. Schrader had it in his hand out to his side. When my brother came out, Mr. Schrader said, 'Remember what I got my hand on; I heard you were making threats against me'; Verne said, 'I haven't made any; I will tell you what I will do. I will make one now to your face, if I ever catch you coming around here again or talking to my sister I will kill you'; Mr. Schrader said, 'I am not even supposed to speak to her.' He wasn't supposed to go out of his way to speak to her, and, 'If you do I will kill you.' Mr. Schrader said, 'You are not going to keep me from going with her.' Just then he pulled his pistol, and Verne grabbed it. I was right up to the car, resting on the running board. When I first saw Mr. Schrader, he was setting under the steering wheel, but when I come back from the house he had moved to the

right side; the car was facing north. About fifteen minutes after they left they drove back. The defendant was drunk, I know. The other man with him was drunk. When he was arrested, the car was across the street from our house, and defendant was asleep."

On cross-examination witness stated:

She had known Mr. Schrader since about October. "I had gone to the barn that day to see Mr. Schrader. I told him, when he asked me if I had been there, I went to tell him what I thought about him. Mr. Schrader, when he was talking to my brother, had his pistol in his hand, and told Verne, 'You will not keep me from going with her'; he raised it up, and just as he did so Verne grabbed it. I don't know whether he pulled the trigger, I was so scared. I heard my brother tell him he would kill him if he ever come back again. We found out, the night before Mr. Schrader was out there, he was a married man.

"Question by Mr. Holland: Some time before the night of this trouble some of the family sent word to Mr. Schrader to stay away from there?

"By Mr. Williams: Object; incompetent, irrelevant, immaterial, not sustaining any issues in the case.

"By the Court: If you know that is a fact. Exceptions allowed.

"By Mr. Holland: Q. Do you know whether that was done or not? A. Yes, sir; it was.

"By Mr. Williams: Move to strike out answer for the reason that no evidence shown that the defendant in this case ever received such information, and prejudicial to the rights of this defendant.

"By Mr. Holland: Defendant can go on the stand and testify to that.

"By Mr. Williams: Counsel objects to the county attorney's statement that the defendant can go on the stand and testify to that.

"The Court: Yes; it may be stricken. Gentlemen of the jury, you needn't consider it for any purpose.

'By Mr. Williams: Now move the court to return a verdict of not guilty as prejudicial error under the rule of the Criminal Court of Appeals.

"By the Court: Overruled. Exceptions allowed."

The foregoing is in substance the testimony introduced by the state, except some testimony touching upon the actions of the defendant as to having been intoxicated on several occasions, and all the testimony we deem necessary to set out, in view of the facts as disclosed by the record in this case.

The defendant urges as one of the grounds for reversal the overruling of his motion for a new trial, and in his fifteenth assignment of error argues at length that the county attorney committed an error sufficient to entitle the defendant to a reversal upon the question of the statement of the county attorney made in open court, and in the presence of the jury, while Velma Chadwell was testifying as a witness for the state, and when she was being questioned by the county attorney as to her knowledge of certain facts, and the defendant objected to the questions, and the county attorney made the following statement: "Defendant can go on the stand and testify to that," which statement was objected to by the defendant, and the objection sustained by the court, and the court advised the jury not to consider the statement for any purpose. The defendant then moved the court to direct the jury to return a verdict of not guilty as prejudicial error under our rule of the Criminal Court of Appeals. The court overruled the objection of the defendant, and exceptions were allowed.

In the view we take of this record, it is neither important nor necessary to consider more than one of the questions presented to this court. It is insisted by the defendant that the court erred in refusing to grant a new trial because of the remarks of the county attorney during the trial when he made the statement, "Defendant

can go on the stand and testify to that," referring to the fact as to whether or not the defendant had received notice to stay away from the prosecuting witness' home.

Section 2698, C. O. S. 1921, is as follows:

"In the trial of all indictments, informations, complaints and other proceedings against persons charged with the commission of a crime, offense or misdemeanor before any court or committing magistrate in this state, the person charged shall at his own request, but not otherwise, be a competent witness, and his failure to make such request shall not create any presumption against him nor be mentioned on the trial; if commented upon by counsel, it shall be ground for a new trial."

The question to be determined by this court is the proper interpretation of the statement of the county attorney during the trial of this case. This court has repeatedly held that the trial begins when the jurors are called into the box for examination as to their qualifications. Caples v. State, 3 Okla. Cr. 72, 104 P. 493, 26 L. R. A. (N. S.) 1033.

In reply to the motion of defendant for a new trial, the county attorney admitted he made the statement complained of by the defendant, and attempted to justify the same on the ground that, when he made the statement, "Defendant can go on the stand and testify to that," it was before the state rested, and during the examination of Velma Chadwell, the second witness for the state.

In the brief of the state, it is argued that the statement made by the county attorney was justified, and the case of Moody v. State, 13 Okla. Cr. 327, 164 P. 676, is cited in support of the state's contention that the statement of the county attorney was not prejudicial to the rights of the defendant, and was not such as to entitle him to a reversal of the case, and the state insists that the Moody Case is exactly in point with the facts in

this case. With this contention we cannot agree. In the Moody Case the court says:

"Counsel for defendant saw fit to make the statement that defendant had denied his guilt to Newby. In answer to this argument the county attorney in effect stated that there was nothing unusual in the fact that he had denied his guilt; that under the circumstances any man would deny his guilt. The record discloses that this argument was not a comment upon the failure of the defendant to testify, but was a comment upon certain evidence introduced in the case. It was made in reply to argument along similar lines by counsel for the defendant. If this argument is to be held reversible error, then all argument of a prosecuting attorney must resolve itself into a mere statement of facts. He would be stepping on dangerous ground at any time he undertook to answer the argument of opposing counsel. And, where opposing counsel invite reply as shown by the record in this case, and such reply may sting, this court cannot say that it is reversible error such as would authorize the granting of a new trial unless from the record itself it is made clearly to appear that the argument complained of constitutes an infringement of the defendant's statutory right not to testify. And, where the argument, when considered and construed in reference to the evidence, shows clearly that the county attorney was confining his argument to the evidence introduced and making certain comments thereon, especially will this court not reverse the judgment on this ground when these comments legitimately followed from the argument of the defendant's counsel and in answer thereto."

In this case it is admitted that the state had not closed its testimony; that in taking of the testimony the defendant interposed an objection to the questions they had been asking the witness, and the county attorney made the statement complained of by the defendant. Section 2698, supra, specifically provides that a person charged with an offense can at his own request be a competent witness, but not otherwise, and his failure to make such a request shall not create any prejudice against him nor be mentioned on the trial. If commented

on by the counsel, it shall be grounds for a new trial. What the county attorney had in mind when he made the statement complained of we cannot say, but the statement indicated that it was a challenge to the defendant to take the stand as a witness.

Similar questions to the one in this case have been before our court many times. In Sturgis v. State, 2 Okla. Cr. 362, 102 P. 57, in the syllabus the court made the following statement:

"Our statute is mandatory, and, when the defendant has failed to become a witness in his own behalf, this fact must not, directly or indirectly, be mentioned or in any manner referred to or called to the attention of the jury. If such an attempt is made by counsel for the state, the court must at once intervene and reprimand the counsel making such an attempt, and see that it is not repeated. If such an attempt is made by the prosecuting attorney and a conviction follows, a new trial must be granted to the defendant."

In the case of Nowlin v. State, 7 Okla. Cr. 27, 121 P. 791, Judge Furman, speaking for this court, says:

"It is shown that the County Attorney in his argument to the jury said that, if appellant had not left the barn as testified to by the state's witness, he (appellant) would have been the best witness as to that fact. Section 6833, Comp. Laws 1909."

"It matters not what we may think of the policy of this statute. It is mandatory, and therefore we have no discretion in the matter, but it is our plain duty to enforce it. It must not be violated, directly or indirectly, either in its letter or spirit."

In the case of Wilson v. Terr., 9 Okla. 331, 60 P. 112, the court quotes with approval the opinion of Justice Valentine, in State v. Balch, 31 Kan. 465, 2 P. 609, and says further:

"We think that this provision of our Criminal Code is mandatory, and leaves no discretion in the trial court

to refuse to grant a new trial upon the application of the defendant. Neither do we think that such highly prejudicial remarks by the prosecuting officer can be cured or remedied by the withdrawal of the statements from the consideration of the jury by the court and admonishing them that they must not consider the same."

In Holmes v. State, 13 Okla. Cr. 113, 162 P. 446, the court says in part:

"Without going into the facts, we will say the evidence is abundant to justify and sustain the verdict. But the defendant did not take the stand in his own behalf or offer any evidence whatever. And in the closing argument the assistant county attorney said, 'Not a single bit of evidence introduced by the state has been contradicted by the defendant.'"

The court further says:

"The remarks of the assistant county attorney, in view of the fact that the defendant had not gone upon the stand himself, nor offered any testimony whatever, we think, were clearly calculated to direct the attention of the jury to the fact that the defendant had not testified in his own behalf; for it is immaterial what particular words are used by counsel, if it is clear that those words have this effect. Had the defendant introduced any evidence, the remarks might then have been construed as having been made with reference to the futility of the testimony introduced; but, in the absence of any evidence on his part, we think the remark could not be construed in any other light than as a reference to the failure of the defendant to testify in his own behalf. And it has been repeatedly held that this statute is mandatory; and, whether the comment is made inadvertently or intentionally, the effect is the same, and the statute requires that a new trial be granted."

In Cokely v. State, 28 Okla. Cr. 431, 231 P. 330, the court in its opinion said:

"The defendant did not take the witness stand in his own behalf. Special counsel employed to prosecute in his closing argument to the jury remarked, 'I wish it were possible that we could have heard what the defend-

ant had to say about the case.' This remark constituted a comment upon the failure of the defendant to testify, and, under section 2698, Compiled Oklahoma Statutes 1921, is ground for a new trial."

In Brown v. State, 16 Okla. Cr. 155, 181 P. 318, the court in the syllabus said in part:

"Code Cr. Proc. sec. 5881, Rev. Laws 1910, prohibits any comment by a prosecuting attorney in a criminal case on the failure of the defendant to testify, and such comment constitutes reversible error, even though it be made in disclaiming any intention of referring to the failure of the defendant to testify in his own behalf."

In the case of Weinberger v. State, 8 Okla. Cr. 441, 128 P. 160, the court said:

"The statute is in accordance with the constitutional guaranty that 'no person shall be compelled to give evidence which will tend to incriminate him, except as in this Constitution specifically provided.' The clear intent of the statute is that the jury in determining their verdict shall entirely exclude from their consideration the fact that the defendant did not elect to testify, and any reference by the prosecuting attorney in his address to the jury to the fact that the defendant did not testify constitutes misconduct, and, under the terms of the statute, the trial court has no discretion, but must grant a new trial. Every person accused of crime is entitled to a fair trial under the forms of law before he may be convicted."

In Williams et al. v. State, 30 Okla. Cr. 171, 249 'P. 433, this court held:

"The trial had commenced when the jury were called into the box for examination."

In this case the jury had been impaneled, and testimony was being taken when the county attorney made the statement complained of by the defendant in this case. The statement made by the county attorney, which is complained of by the defendant, was not only a men-

tion of the defendant in the trial, but, when strictly analyzed and interpreted, amounted to a challenge to the defendant to take the stand for the purpose of contradicting the state's testimony. Certainly the calling attention of the jury to the defendant and mentioning the fact that he could testify to the question involved would be the same upon the minds of the jurors as if called to their attention by the argument of the county attorney later in the trial. The testimony in this case is conflicting as to the actions of the defendant at the time the alleged offense occurred, and is such that the verdict of the jury might have been for acquittal or conviction had the trial been conducted properly and no errors committed during the trial.

There are various assignments argued by the defendant in which there is considerable merit. It is not clear from the record in this case that the defendant is guilty of the charge of which he was convicted or any other assault upon the prosecuting witness. We cannot say that it is apparent from the record that defendant is guilty and that the jury could have arrived at no other verdict than the verdict returned by it. We think the statement of the county attorney, complained of by the defendant, was improper, and probably resulted in the verdict of guilty being returned against him, in view of the fact that the defendant did not take the witness stand in his own behalf. It is difficult to understand why the county attorney made the remark he did, but we think, under our statute, it was prejudicial to the rights of the defendant.

The case is reversed and remanded.

DOYLE, P. J., and EDWARDS, J.. concur.