Ted John BARNHART, Plaintiff In Error,

v.

The STATE of Oklahoma, Defendant In Error.

No. A–12342.

Criminal Court of Appeals of Oklahoma.

Oct. 10, 1956.

As Corrected on Denial of Rehearing

Oct. 31, 1956.

Gene C. Howard, Tulsa, for plaintiff in error.

.Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

BRETT, Judge. .

Plaintiff in error, Ted John Barnhart, defendant below, was charged by information in the Court of Common Pleas · of Tulsa County with the offense of operating a motor· vehicle on the public highway, about 1 mile north of the city of Tulsa, while under the influence of intoxicating liquor, said offense being ·allegedly committed on the 3rd day of September, 1955. He was tried by a jury, convicted, and his punishment fixed at ten days in jail and a $10 fine. Judgment and sentence were entered accordingly from which this appeal has been perfected.

Briefly, the evidence, as testified to by Highway Patrolman John Larmer and Sal Veder, a reporter for the Tulsa World, shows that the defendant drove his automobile, at the alleged time and place, onto the right shoulder, then across the center line to the left side of the highway, several times. The Patrolman testified that he had great difficulty in stopping the defendant and did so only with the aid of his siren. He further testified that when he got out of his car, the defendant staggered and smelled strongly of alcohol. Sal Veder corroborated Patrolman Larmer to the effect that the defendant was intoxicated and smelled of liquor.

Testimony of Patrolman Larmer was objected to as follows:

"Q. While you were out there on· the road John, or on your way to town, did you have occasion to have any con-· versation with this defendant? A. Yes, sir.

"Q. Tell the Court and jury what that conversation consisted of? A. We talked to the defendant for quite a while and asked him to take· the test and he refused.

"Mr. Howard: We object to that and move for a mis-trial, on the grounds—

"The Court: Just don't get so excited.

"Mr. Howard: On the grounds that the testimony of this witness is prejudicial to the jury, there has been no testimony and no questions asked about any test.

"The Court: The witness is relating a conversation with him. You can inquire into that. The objection and request for a mis-trial is overruled.

"Mr. Howard: To which we except."

When the State rested, the defendant renewed his motion for mistrial and then testified in his own behalf. In his testimony he related the facts, on direct evidence, on the point as follows:

"Q. Now after you were stopped out there on the highway did the patrolman ask you anything about taking a test, or whether or not you would take a test? A. No, sir.

"Q. Did he give you any manual tests at all? A. No, sir.

"Q. Did he ask you to pick up any coins? A. No, sir."

On cross-examination he testified further as follows:

"Q. * * * the highway patrolmen did not ask you to pick up any coins, is that correct? A. That's correct.

"Q. And the highway patrolmen did not ask you to walk any straight line? A. That's correct.

"Q. Did the highway patrolmen ask you to take any other type of test? A. Yes, sir.

"Mr. Howard: That is objected to.

"The Court: Overruled.

"Mr. Howard: Exception.

"Q. What other type of test did they offer you? A. Intoximeter test.

"Q. Did you take it? A. I said I did not want it and thought I should be better informed as to the question, and that's all there was to the matter. I asked them 'should I', or 'should I not'?

"Q. And they did not answer you? A. That's right."

On redirect examination the defendant further testified as follows:

"Q. Mr. Barnhart, after you talked to the patrolmen about the test and after you asked them 'should I, or should I not' that was what you say happened there? A. Yes, sir.

"Q. Did they ever offer to give you any test after that? A. No, they just dropped it there, they did not answer.

"Q. Did they say anything further to you about the test? A. No, sir."

Thereafter, on rebuttal testimony, Sal Veder, in testifying as to what was said by and between the defendant and the officers relative to the intoximeter test, related the conversation to the effect that the defendant was asked if he would take the intoximeter test and the fact that the defendant asked the patrolmen, "Should I or should I not?" To which the officer replied explaining the nature of the intoximeter test and its operations. Veder further testified that the patrolman asked the defendant four times whether he would take the intoximeter test.

On the foregoing pertinent parts of the record, the defendant contends that the testimony in regard to his refusal to take the intoximeter test was a violation of his constitutional right to remain silent and against self incrimination. This contention, as an abstraction, has considerable merit and we shall pass upon the matter when it is properly presented. But, irrespective of the merit to the contention, as an abstract proposition, that question, herein, has not been properly preserved and the proper predicate does not exist for passing on the matter at this time. In fact, the privilege against self incrimination in the case at bar has been waived.

■ We are of the opinion that the procedure in the record as made by the state creates no infringement of the defendant's constitutional right against self incrimination. He had refused to take the test as was his right so to do. He had the right

under the law to stand on that refusal. Toms v. State, 95 Okl.Cr. 60, 239 P.2d 812. But, when he took the stand in his own behalf and opened up the matter of the kind of tests to which he may have been subjected, he thereby waived the privilege and all other relevant facts became pertinent and were admissible either on cross examination or on rebuttal. Storer v. State, 84 Okl.Cr. 176, 180 P.2d 202; Fields v. State, 85 Okl.Cr. 439, 188 P.2d 231; Le Blanc v. State, 95 Okl.Cr. 280, 245 P.2d 134. Hence, if any error was committed by the admission of the state's evidence in chief as to "the test", it was cured by going into the matter himself.

Hence, the fact brought out by the state on cross examination as to the suggestion that he take an intoximeter test was proper as well as the showing made on rebuttal relative to what was said about the intoximeter test and the explanation thereof in response to the defendant's statement to the effect that he thought he should be better informed as to whether he should or should not take it. The defendant finds himself in a most inconsistent position and in the language of an old, trite, but appropriate saying, he is trying to have his cake and eat it at the same time.

A case precisely in point with the situation herein involved is that of State v. Kaufman, 211 La. 517, 30 So.2d 337, 343, where Kaufman was sworn as a witness in his own behalf and during cross examination by the District Attorney he was asked as to whether he had been requested by anyone to submit to a test of alcoholism. Therein, the defense objected on the grounds that that question was an attempt on the part of the state to make the defendant give an incriminating answer and under the law no person could be compelled to give testimony against himself. The Louisiana Supreme Court made the following observations in sustaining the trial court's ruling:

"The accused having elected to testify in his own behalf and having testified on direct examination that he was not under the influence of intoxicating liquor at the time of the accident, it was proper for the State to cross-examine him on this phase of the case, and the trial judge correctly overruled the objection.

\*    \*    \*    \*    \*    \*

"The rule with reference to waiver of privilege against self-incrimination by a defendant who voluntarily takes the stand as a witness on his own behalf is given in 8 Wigmore on Evidence, 3rd Ed., Section 2276, Subsection 2, page 440, as follows: 'The case of an *accused* in a criminal trial who *voluntarily* takes the stand, is different (from that of an ordinary witness). Here his privilege has protected him from being asked even a single question, for the reason that no relevant fact could be inquired about that would not tend to criminate him. \* \* \* On this very hypothesis, then, his voluntary offer of testimony upon any fact is a waiver as to all other relevant facts, because of the necessary connection between all. His situation is distinct from that of the ordinary witness, with reference to the point of time when a waiver can be predicated, because the ordinary witness is compelled to take the stand in the first instance, and his opportunity for choice does not come till later, when some part of the criminating fact is asked for: While the accused has the choice at the outset.' (All italics ours.)"

We are therefore of the opinion that the contention herein sought to be asserted was waived by the defendant.

■■ The only other contention raised by the defendant concerns the trial court's instruction No. 7 to the effect the defendant's refusal to take the intoximeter test should not be regarded as an admission of guilt which was given, withdrawn, and the jury admonished not to consider the same. Thereafter, the trial court gave a substitute instruction to the effect that the defendant's refusal to take the intoximeter test should not be regarded as any evidence of guilt whatsoever. This instruction was

later withdrawn and the original instruction as to admission of guilt given. We are of the opinion that neither of these instructions should have been given, since both amounted to a comment on the weight of the evidence, which is for the determination of the jury. They were therefore erroneous, but since they were favorable to the defendant, they could be regarded as only harmless error. This court has repeatedly held that to require reversal of a judgment, error plus prejudice must appear in an instruction and error or irregularity alone is not sufficient. 22 O.S. 1951 § 1068; Scott v. State, Okl.Cr., 279 P.2d 1113.

For all of the above and foregoing reasons, the judgment and sentence is affirmed.

JONES, P. J., and POWELL, J., concur.