Raymond Emanuel DUCKWORTH, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–12385.

Criminal Court of Appeals of Oklahoma.

Jan. 9, 1957.

Specially Concurring Opinion Jan. 14, 1957.

Rehearing Denied April 24, 1957.

Jones & Beauchamp, by K. C. Beauchamp, Jr., Duncan, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Fred Hansen, First Asst. Atty. Gen., James P. Garrett, Asst. Atty. Gen., for defendant in error.

BRETT, Judge.

Plaintiff in error, Raymand Emanuel Duckworth, defendant below, was charged by information in the County Court of Stephens County, Oklahoma, with the offense of driving a motor vehicle on a public highway while under the influence of intoxicating liquor, 47 O.S.Supp.1955 § 93. He was tried by a jury, convicted, and sentenced to a period of thirty days in the county jail and a fine of $200. Judgment and sentence were entered on the jury's verdict from which this appeal has been taken.

The defendant makes one decisive contention, herein, to the effect that the trial court erred in permitting in evidence the fact that the defendant had refused to take an intoximeter test and further permitted the state to show what evidentiary fact such a test would have disclosed.

The state's complaining witness, Lee Edward Wilson, testified that the defendant was drunk when he turned his automobile to the left across an intersection of the highway without a signal, into the path of Wilson's automobile, precipitating a collision on State Highway No. 7, east of Duncan, Oklahoma. Wilson further testified that it was his opinion the defendant was drunk because he was red faced and he refused to take the test. (The test was not identified in his testimony.) Officer Massey testified that the defendant was thick of tongue, spoke brokenly, was unsteady on his feet, his face was red, and he smelled of whiskey.

The trial court then permitted the state to show, in its case in chief, over the objection of the defendant, that Officer Massey asked the defendant if he would take the intoximeter test and that Duckworth refused to take it. Exception was saved by the defendant to this evidence. Then, over the defendant's objection and exception, the question was repeatedly asked if Duckworth refused to take the intoximeter test. Finally, over the objection and exception of the defendant, Officer Massey testi-

fied that the purpose of the test was to determine how much alcohol a person had in his blood. Then, over objection, the question was asked if "it would say whether a man had a less percentage than was necessary to intoxicate or would it say whether he had more?" In sustaining the objection to this evidence, the trial court said: "I think so." But, the trial court did not admonish the jury to disregard it, and if he had, the damage had already been done. Removing the evidentiary harpoon would not have repaired the injury. It was then shown by the state that the defendant was cocky and uncooperative at the police station because he would not submit to a test which, under the law, he was permitted to refuse. It is well to note one of the reasons brought out in evidence on examination of the complainant was that he thought the defendant was drunk because he would not take the intoximeter test. It is apparent that the object in the introduction of this evidence was to leave just such impression with the jury. We cannot say it did not have such effect.

The defendant's evidence in relation to the intoximeter test was that he refused to take it and that the officer told him, "Well, I'm going to lock you up." In other words, either you take it or I will imprison you. It is well in this connection to note the officer did not arrest the defendant at the scene of the collision but permitted him to go on his own and report later to the police station. It appears that if the officer had believed the defendant was drunk in his presence, at the scene of the collision, he would have arrested him there, taken him into custody, and brought him to the police station.

The foregoing evidence was clearly inadmissible in the state's evidence in chief. As we said in Barnhart v. State, Okl.Cr., 302 P.2d 793, 795:

"He had refused to take the test as was his right so to do. He had the right under the law to stand on that refusal. Toms v. State, 95 Okl.Cr. 60 239 P.2d 812."

See also Alexander v. State, Okl.Cr., 305 P.2d 572.

The state relies on the Barnhart case, supra. But, that case does not support the state's contention, herein, for therein the defendant took the stand in his own behalf and in his evidence in chief opened up the question of the kinds of tests he may have been subjected to. He thereby waived the right to remain silent on cross examination as to all pertinent or relevant facts as to the tests. While herein, the defendant's refusal to take the test was used by the state in its case in chief for purely prejudicial purposes. The accused's refusal should have ended the inquiry on the subject. It ill behooves the courts to say you have a right to refuse to do something, which may prove either beneficial or detrimental to you, and yet, notwithstanding your right so to do, we will permit your refusal to be shown and enable the state to destroy your right and achieve indirectly by innuendo what it was prevented by law from accomplishing directly. We can conceive of no greater inconsistency.

To allay possible confusion, we deem it well to point out that there is a clear distinction in the Alexander case, supra, and the case at bar. Therein, the intoximeter test was taken producing real evidence of probative value. Hence, the question was therein imposed as to its admissibility or as to whether it was obtained in violation of the rule against self incrimination. The question, therein, was resolved against the defendant on the ground that the rule could only be invoked as to oral evidence given before the jury, except that such evidence as was obtained out of the jury's presence by threats or forcible extractions in such a manner as to shock the conscience of the court or offend public sensibilities was held inadmissible.

Herein, nothing was done. Only a refusal was made to the test, which might have been productive of real evidence of probative value. But since the test was not taken, nothing of probative value was developed. Therefore, the rule against self incrimination is not involved, herein. The refusal to take the intoximeter test constitutes what might be termed a negative predicate which was productive of nothing more than sheer speculation, surmise, and innuendo. Hence, only two questions are involved in the case at bar. First, was it within the defendant's right to refuse to take the test? The answer must be in the affirmative. Toms v. State, supra; Alexander v. State, supra. Second, the defendant having refused, was evidence of the refusal admissible in evidence and was it the subject of comment by the state? We are of the opinion the answer must be in the negative, lest the defendant be the victim of prejudice created by no real fact produced by the test, but by surmise, speculation, and innuendo based only upon the assertion by the defendant of his fundametal right to refuse the test. In no other way can the right to refuse have any meaning or constitute more than a mere shadow of substance. This court has repeatedly held that no conviction based upon speculation, surmise, or innuendo will be sustained. Slaton v. State, 97 Okl.Cr. 12, 257 P.2d 330; Doty v. State, 88 Okl.Cr. 381, 203 P.2d 444; Taylor v. State, 36 Okl.Cr. 419, 255 P. 158.

Moreover, in this connection there is evidence to sustain the defendant's contention he was not even driving the automobile at the time of the collision. The jury might have believed him had not the strong inference of intoxication been left by admission of evidence of his refusal to take the intoximeter test. The procedure pursued in the case at bar was highly prejudicial to the rights of the defendant.

We have been unable to find any cases directly in point as we indicated we could find none in the Barnhart case. By analogy, however, we feel compelled to follow the provisions of 22 O.S.1951 § 701, the pertinent part of which reads as follows:

"* * * the person charged shall at his own request, but not otherwise, be a competent witness, and his failure to make such request shall not create

any presumption against him nor be mentioned on the trial; if commented. upon by counsel it shall be ground for a new trial."

In the case at bar, the end effect of the procedure pursued is to make the defendant's refusal to take the intoximeter test evidence by innuendo that he refused the test because he feared the results thereof. In effect, such procedure creates a presumption against him because of his failure to take the test. We believe the procedure adopted in the case at bar is in violation of the provisions of the foregoing statute. The effect of such procedure has been condemned by this court numerous times, in analogous cases construing the foregoing statute. In Bock v. State, 80 Okl.Cr. 28, 156 P.2d 381, 382, it was said:

"Where this statute is violated by the prosecutor commenting on the failure of the defendant to testify, it is held that it is the mandatory duty of the trial court to order a new trial. Dorsett v. State, 16 Okl.Cr. 65, 180 P. 557; Schrader v. State, 40 Okl.Cr. 261, 268 P. 325; Cokely v. State, 28 Okl.Cr. 431, 231 P. 330; Rice v. State, 66 Okl. Cr. 434, 92 P.2d 857; Shepherd v. State [77 Okl.Cr. 131], 139 P.2d 605.

"In the case of Weinberger v. State, 8 Okl.Cr. 441, 128 P. 160, 161, it is said: 'The statute is in accordance with the constitutional guaranty that "no person shall be compelled to give evidence which will tend to incriminate him, except as in this Constitution specifically provided." The clear intent of the statute is that the jury in determining their verdict shall entirely exclude from their consideration the fact that the defendant did not elect to testify, and any reference by the prosecuting attorney in his address to the jury to the fact that the defendant did not testify constitutes misconduct, and, under the terms of the statute, the trial court has no discretion, but must grant a new trial. Every person accused of crime is entitled to a fair trial under the forms of law before he may be convicted.'

"In Nowlin v. State, 7 Okl.Cr. 27, 115 P. 625, 121 P. 791, 792, it is said: 'It matters not what we may think of the policy of this statute. It is mandatory, and therefore we have no discretion in the matter, but it is our plain duty to enforce it. It must not be violated, directly or indirectly, either in its letter or spirit.'"

We are of the opinion that the foregoing statute and cases are clearly applicable to the case at bar. The judgment and sentence imposed, herein, is accordingly reversed and remanded for a new trial in conformity with the principles herein announced.

JONES, P. J., concurs.

POWELL, J., concurs in conclusion

POWELL, Judge (specially concurring in conclusion).

I agree that the defendant should be granted a new trial. I do not agree that the State in making out its case could not show whether or not an officer offered to give the accused an intoximeter test, and whether the test was given, and if not, why not.

In the within case the accused, according to officer Wilson, refused to submit to a test for intoxication. The error would seem to be that court permitted repeated asking of the question, after it had once been answered, and the repetitions were so formed as to leave the impression that if the test had been given it would have corroborated the conclusion of the officer that defendant was intoxicated. This, although the defendant was not arrested at the scene of the collision but was permitted to go his way and report later to the police station. Of course the test might have shown that the accused was not intoxicated.

I think the provisions of 22 O.S.1951 § 701 inapplicable. That statute merely reiterates the self-incriminatory provision of

our Constitution, Art. II, § 21, to the effect that "no person shall be compelled to give evidence which will tend to incriminate him", but with added provisions, the pertinent portion reading: "* * * the person charged shall at his own request, but not otherwise, be a competent witness, and his failure to make such request shall not create any presumption against him nor be mentioned in the trial; if commented upon by counsel it shall be ground for a new trial."

Long ago in Ricketts v. State, 1923, 23 Okl.Cr. 267, 215 P. 212, this court pointed out the distinction between testimonial utterances and the use of an accused's body as evidence.

There defendant and two others were jointly charged with the theft of seven automobile casings. Foot tracks were found near the place where the theft was committed. Defendant, then under arrest and in the custody of the sheriff, was compelled to take off the shoes worn by him, the shoes were taken to the place where the theft was committed, and fitted into the tracks there found.

The defendant objected to all the evidence, "because it shows that defendant was forced, while under arrest, to furnish evidence against himself in violation of his rights under the Federal and State Constitutions, which provide that no person shall be compelled to furnish evidence against himself." There Ricketts, to sustain his position, cited two cases, one being Davis v. State, 131 Ala. 10, 31 So. 569, which held that:

Evidence that defendant declined to consent to the taking away of the shoes which he was wearing, for the purpose of comparing them with tracks supposed to have been made by him is inadmissible under the constitutional guaranty of immunity from being compelled to incriminate himself.

The principle approved in the Alabama case, as is immediately apparent, is the principle that the majority opinion now enunciates. But it was rejected in the Ricketts case, Judge Doyle for the court there saying [23 Okl.Cr. 267, 215 P. 213]:

"The constitutional provision guarantees no greater privilege than that all persons, whether parties or extraneous witnesses, shall be free from compulsion by legal process, to give self-incriminating testimony. The principal purpose of the provision was to prohibit compulsory examination of prisoners before trial or upon trial, for the purpose of extorting unwilling confessions or declarations implicating them in crime. It could reach further only in exceptional and peculiar cases coming within the purpose and spirit of the inhibition."

Cited, among other authorities, was Wigmore's work on Evidence, and State v. Graham, 74 N.C. 646, 21 Am.Rep. 493. In the Graham case, where the accused was forced over his objection to put his feet in certain footprints for comparison, the court held that though the act of the officer was an invasion of defendant's right, yet it did not affect the resemblance of the footprints, the only fact which had weight as evidence. The court then proceeded to clearly set out the distinction between evidence by word of mouth, and physical or real evidence. All this we attempted in some detail to set out in the recent case of Alexander v. State, Okl.Cr., 305 P.2d 572. We there enumerated many things that an accused could be required to do over his objection, such as forcibly taking fingerprints, displaying bodily scars for identification, forcibly trying on a coat out of the presence of the jury.[1] See Holt v. United States, 1910, 218 U.S. 245, 252, 253, 31 S.Ct. 2, 6, 54 L.Ed. 1021, 20 Ann.Cas. 1138, and where Justice Holmes said:

"But the prohibition of compelling a man in a criminal court to be a witness

---

1. The Oklahoma case of Ward v. State, 27 Okl.Cr. 362, 228 P. 498 makes a distinction between requiring an accused

to make demonstrations before a jury and the same requirements out of the presence of the jury.

against himself is a prohibition of the use of physical or moral compulsion to extract communications from him, not an exclusion of his body as evidence when it may be material."

A long list of cases where the above principle has been applied was set out in the Alexander case, supra. It is earnestly recommended that for a clear understanding of the application of the principle that the cited cases, including those listed in the footnotes, be studied. Nearly all the appellate courts in the United States and most of the text book writers approve the distinction we are discussing.

But we have cautioned that there must be a limitation on the force used in obtaining evidence, or officers may be faced with the due process clause of our Federal Constitution set out in the Fourteenth Amendment, Art. II, § 7, of Okl.Const., all as illustrated in the fairly late case from the Supreme Court of the United States: Rochin v. People of California, 1952, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183, 25 A.L.R.2d 1396, where the methods used for exacting evidence from an accused were shocking to the judicial conscience and held violative of the due process clause of the Federal Constitution.

Assuming a familiarity with Alexander v. State, supra, it will be remembered that we there held that the accused was given certain manual tests and the breath test for alcohol against her will (though no violence or threats were involved), yet in making out its case the State was permitted by witnesses to show that the accused did take the manual tests and failed, and did take the drunkometer test. An expert witness testified as to the results of the test, and the meaning. The coercion used in obtaining this evidence was not sufficient to make it inadmissible. We said:

"The privilege against self-incrimination was not violated by testimony of officer as to certain manual tests for intoxication given defendant following her arrest for driving a motor vehicle while under the influence of intoxicating liquor.

"The privilege against self-incrimination is not violated by testimony of officer as to the result of a Harger breath test or drunkometer test for alcoholic content of blood, resulting from an examination of accused by officer without her permission following arrest on a charge of driving a motor vehicle while under the influence of intoxicating liquor, provided such witness qualifies as one competent to make the test."

The pertinent portion of 22 O.S.1951 § 701, that we have hereinbefore quoted (and relied on in the majority opinion as a basis for their ruling) only forbids an accused being required to come to the witness stand and testify—*to give oral testimony*—and his failure to testify in his own behalf creates no presumption against him so far as the law in this jurisdiction is concerned, and it constitutes reversible error for the prosecution to comment to the jury on the fact that an accused failed to testify.

Having in the Ricketts case, in Ward v. State, 27 Okl.Cr. 362, 228 P. 498, and in the Alexander case delineated a distinction between testimonial evidence and real evidence, and having held that forcibly obtaining real evidence, with a certain limitation, from an accused out of the presence of the jury did not violate the self-incriminatory provision of our Constitution, Art. II, § 21, Okl.Const., it follows that the statutory provision in question, 22 O.S.1951 § 701, being but a reiteration of the constitutional provision, could not be considered to have any greater force or power than the constitutional provision.

I think the distinction mentioned vital to law enforcement, particularly in connection with the application by the law enforcement agencies of modern methods for proof of intoxication or non-intoxication of motorists, in effort to lower the appalling and ever-increasing death rate of citizens using the public highways. And having

spent weeks of research in the Alexander case, where the distinction in question was involved, and being convinced of the soundness of the distinction, I feel compelled to add the above observations.

On Petition for Rehearing

BRETT, Presiding Judge.

Petition for rehearing denied, and the Clerk is ordered to issue the mandate forthwith.

NIX, J., concurs.

POWELL, J., dissents.

POWELL, Judge (dissenting).

The State seeks a rehearing of that portion of the majority opinion of January 9, 1957, wherein it was held that "in a criminal case, where the accused is charged with being intoxicated and is asked by the State to submit to an intoximeter test to determine the amount of blood alcohol, it is the accused's statutory right, 22 O.S.1951 § 701, to refuse to submit thereto".

I would grant the rehearing, as the statute in question by its own terms only applies to an accused being required to give testimonial evidence against himself. Where the accused fails to give testimonial evidence, such fact may not be commented upon to the jury. But for the statute there would be no inhibition. Most of the states have no such provision. I would not extend the statute to cover a situation not specifically stated. Such would amount to legislating—a function not properly ours. The public as well as the individual, have rights that should be protected. In our enthusiasm there is, too often, a tendency to overlook this basic fact.

In view of the Ricketts, 23 Okl.Cr. 267, 215 P. 212, Ward, 27 Okl.Cr. 362, 228 P. 498, 499, and Alexander, Okl.Cr., 305 P.2d 572 cases from this court, and Holt v. United States, 218 U.S. 245, 31 S.Ct. 2, 6, 54 L.Ed. 1021, as well as other authorities, all discussed in our Alexander case, it is apparent that a motorist arrested in the act of drunken driving does not have any more right to refuse to give a sample of his breath (that would be the means of determining whether or not he would be charged with the offense for which arrested, or not charged because the test would show insufficient alcohol in his blood to support the charge, or no alcohol in his blood, which would indicate some other disability that might require medical attention) than an arrested person would have a right to refuse to be searched on the ground that what might be found might be offered in evidence against him, such as refusal to give up stolen articles found on the person, or to give up weapons that might be on the person or to disclose birth-marks, tattoos or other marks useful in identification. Varying amounts of force can be used by officers in obtaining the kinds of evidence mentioned, the amount depending upon the nature of the evidence. Many illustrations might be given where the conduct of an arrested person might bear upon the question of guilt and properly be brought to the attention of the jury. I find no valid reason for an exception here.

In search for weapons, if an accused would attempt to use a weapon, the officers in effort to protect their lives might use all force necessary for their protection. Specifically, where the arrested person accused of drunken driving would refuse to give a breath sample and actively resisted, the officers could not resort to violence, but by reason of the inapplicability of the self-incriminatory provision of the Constitution and statute to such a circumstance, it could not, under the principle developed in the authorities cited, constitute error for the arresting officer or others present, to state why they were unable to make an intoximeter test. To hold otherwise would be to repudiate the principle enunciated by Wigmore and followed in the many cases listed in our Alexander case.

We believe our position is supported in principle by a late case from the Supreme Court of the United States (February, 1957, published during the pendency of petition for rehearing in the within case), Breit-

haupt v. Abram, 352 U.S. 432, 77 S.Ct. 408, 1 L.Ed.2d 448. There a blood sample to test an unconscious person who, prior to becoming unconscious, was driving a motor vehicle at the time of a fatal accident, was extracted, obviously without his consent and presumably against his will. This was held in a six-justice majority opinion (Warren, Black and Douglass dissenting) as not violative of the constitutional rights of the motorist. Such being the law in the case of an unconscious motorist, why in the case of a conscious motorist would it be unlawful to show that the motorist refused to permit a breath sample when he might have been in effect coerced and the sample taken without his consent? I think this court should be most careful in observing long adhered to principles, long recognized as the law of the land, and should, particularly where constitutional questions are involved, endeavor to abide by the adjudicated cases from the Supreme Court of the United States.