# UHLES v. STATE.

No. A-11375. May 29, 1951.

(232 P. 2d 413.)

John A. Cochran, Tulsa, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Owen J. Watts, Asst. Atty. Gen., for defendant in error.

POWELL, J.  Robert Jackson Uhles was charged by information filed in the county court of Rogers county with the unlawful possession of intoxicating liquor.  Thereafter, the defendant filed a motion to suppress.  The record indicates that after the hearing on the motion to suppress the evidence, the county court reporter resigned without transcribing her notes, and by agreement between the parties further evidence was taken.  Counsel for defendant complains that the new stenographer had difficulty preparing the case-made, and while he admits that he is bound by the record, still he states that it should show that the officers discovered the intoxicating liquor involved by one of them crawling back on defendant's truck and lifting a tarpaulin, and that in the absence of a search warrant, such discovery and search was illegal. If this was the record, there would be much merit to the argument of counsel, and such facts might work a reversal.  However, only the record filed in this court may be considered.

It appears that by agreement between the parties, the evidence introduced on the motion to suppress was considered and used as the evidence on the trial. The court found the defendant guilty as charged, and assessed his punishment at 30 days imprisonment in the county jail, and to pay a fine of $100.

It was brought out by the evidence that Marion Son and Mayes Lowery, troopers of the Oklahoma State Highway Patrol, were traveling east on U. S. Highway 169, about two miles east of the Rogers-Tulsa county line, in Rogers county, in answer to a previous call.  They saw a truck parked on the north side of the highway, headed west, and a man waving at them to stop.  They continued on and completed their previous call, but came back thereafter to where the truck was parked on the highway, but no one was in or around the truck.

Trooper Marion Son testified at the time of the trial that he was under-sheriff in Mayes county, but was a member of the Highway patrol on December 14, 1947. He was asked:

"Q. What caused you to stop the second time? A. We stopped to assist in any way we might assist. Q. At the time you stopped, you had no idea there was liquor in the truck? A. No, sir. Q. How did you find there was liquor in the truck? A. My partner first came by in a patrol car and flashed a light and stepped on the running board and shined his light and said to me there is whisky in this truck."

Trooper Mayes Lowery on direct examination testified:

"Q. After you looked inside the cab, you stepped on inside of the truck? A. On the running board of the cab of the truck. Q. Then what happened? A. I could see in the confusion there a little and in the right rear corner some boxes. Q. Did you step back and examine the boxes? A. I went back almost to the rear of the truck. Q. You took the wihskey? A. Yes, sir, on top of the truck, that is on top of the load.

On cross-examination Trooper Lowery testified that they returned to the truck in order to give the driver, who had waved at them, any assistance they might be able to render. That after a few minutes, the man who had waved at them returned to the truck, accompanied by Mr. Crocker, from Collinsville, who operated a garage at that place, and that they ascertained that the driver of the truck was Robert Jackson Uhles. That they advised Mr. Uhles when he returned to the truck that they had discovered that he had a load of whisky, and they advised him that he was under arrest.

Concerning the discovery of the whisky, witness was further asked:

"Q. What was this whisky covered with? A. Tarpaulin. Q. Entirely covered? A. All except a little portion in the right rear corner. Q. Was this whiskey in cartons? A. In card-board cases. Q. How did you ascertain it was whiskey? A. I went back and at the rear of the truck I could see whiskey and lettered 'National Distillery' or something which lead me to believe it was whiskey."

On re-direct examination, Trooper Lowery testified as follows:

"Q. When you came up on this truck, Mr. Lowery, you were not up there for the purpose of ascertaining whether or not there was a violation of law? A. No, sir. Q. Up until the time you had no suspicion? A. No, sir. Q. You were there because there was a man that had flagged you down and you thought there was some kind of trouble? A. Yes, sir. Q. You didn't have a search warrant? A. No, sir."

The defendant contended that his motion to suppress the evidence should have been sustained by the court due to the fact that the search and seizure was illegal and unlawful for the reason that the officers did not possess a search warrant, and that no crime was committed in the presence of the officers which would authorize the resultant search and seizure.

Of course it is the duty of the highway patrolmen of the State of Oklahoma to patrol the highways of the state, and by reason of the fact that the driver of the truck in question had indicated by waving at the patrolmen that he was in distress and needed their assistance, it is evident that the officers were trying to carry out their duties to be of assistance to the motorist when they returned to the truck in question. The driver in the meantime had departed, seeking other help. The officers, by reason of the driver having waved at them, sought to locate him about the truck, but could not find him in the cab or near the truck, but apparently in their effort to locate him and find out what was wrong, did discover that the truck was partially loaded with whisky. In fact, the sub-

sequent inventory accounts for 65 cases of bonded whisky. While, as heretofore indicated, counsel for defendant contends that one of the officers discovered the whisky by climbing up on the top of the loaded truck and looking under the tarpaulin, the evidence as disclosed by the record shows that the officers merely stood on the running board of the cab and flashed his light on the top of the truck, and that the tarpaulin did not enitrely cover the load, and that he noticed cardboard boxes that contained whisky and the lettering "National Distillery." The card-board boxes were ordinary whisky boxes.

The question presented is whether or not under the facts developed the officers had the right to take possession of the cardboard boxes labeled whisky, and to thereafter arrest the owner or person in charge when he reappeared at the scene.

In the case of Davenport v, State, 71 Okla. Cr. 91, 108 P. 2d 549, one Davenport drove his automobile into a public parking place, left the car and went across the street to a restaurant. Certain policemen who had seen him drive into the parking lot went to the automobile, looked through a glass window of the car and saw several brown packages in the car. No whisky was visible, but on the packages were written the initials of the kind of liquor each contained, such as "J.E.P." for James E. Pepper, etc. The officers recognized the packages as being lugs of whisky, although no bottles of whisky were in view. The search and seizure was sustained on the ground that the crime was committed in the presence of the officers, and authorized the arrest of defendant, and search of his automobile. This court held:

"Where an automobile is parked on a public street, or in a public parking lot, an officer has the right to look through the glass windows of said car, and if intoxicating liquor is seen therein, which is being used in violation of law, it is his duty to arrest the owner or occupant of the car, and a search of the same thereafter is not an unlawful or unreasonable search under the law."

In the Davenport case a number of other cases are reviewed where the facts are similar to the facts hereinabove recited. Of particular interest is the case of Nott v. State, 70 Okla. Cr. 432, 107 P. 2d 366; also Matthews v. State, 67 Okla. Cr. 203, 93 P. 2d 549.

In the case of Young v. State, 71 Okla. Cr. 112, 108 P. 2d 1028, the defendant had stopped his automobile in a line of traffic behind a truck, which was stuck in a snow bank. Some deputy sheriffs were driving on the highway and stopped their car in the line of traffic, got out to assist in pushing the truck, and as they passed the car of the defendant, they saw a number of packages of whisky, wrapped in brown paper, lying in the car. No bottles were in view, but the officers recognized the packages as being lugs of whisky. This court held that where one is transporting large quantities of intoxicating liquor upon the public highways, and an officer in the discharge of his duty observes through the window of the car the intoxicating liquor upon the seat and floor of said car, it is not necessary to procure a search warrant before arresting the defendant and searching the automobile, for the reason that a crime is being committed in his presence, citing O. S. 1931 § 2780, Tit. 22 O. S. 1941 § 196.

See, also, Farmer v. State, 86 Okla. Cr. 308, 192 P. 2d 716; Franklin v. State, 71 Okla. Cr. 115, 109 P. 2d 239, and Griffin v. State, Okla. Cr. 210 P. 2d 671.

By reason of the fact that in the within case the officers were in a place where they had a right to be in carrying out their duties of patrolling the public highways of the State of Oklahoma, and while endeavoring to locate the driver of a parked truck, who had signalled to them, indicating that he was in

distress and needed their assistance, discovered that the truck contained contraband whisky, it is determined that a crime was committed in the presence of the officers, and that they had the right to take possession of the whisky in question, and to thereafter arrest the owner, or person in charge, when he reappeared at the scene. It is determined that the officer had a right, under the facts recited, to flash his light on the truck in an effort to discover the driver who signalled, and that the subsequent discovery of the liquor exposed by reason of the tarpaulin not fully covering the same did not constitute an unlawful search.

For the above reasons, the case is affirmed.

BRETT, P. J., and JONES, J., concur.