## WALLS v. STATE.

No. A-11356.   July 18, 1951.

(234 P. 2d 916.)

Jeptha A. Evans, Booneville, Ark., and Windham & Windham, Poteau, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

POWELL, J.   Pleas S. Walls, who will hereinafter be referred to as defendant, was charged by information filed in the county court of LeFlore county with the offense of transportation of intoxicating liquor; was tried before a jury, convicted, and punishment was fixed at 30 days in the county jail and a fine of $250.   Appeal has been duly perfected to this court.

The information in part charges that the defendant: "* * * did wilfully, wrongfully and unlawfully transport intoxicating liquors, to-wit: Seventy-two pint bottles of whiskey and forty-eight one-half pint bottles of whiskey from some point in the State of Oklahoma, unknown to the County Attorney to a two-story brick tile building located on the Northwest corner of Lot 7, in the Frank Ward Addition to Heavener, Oklahoma, located in the Northwest quarter of the Northwest quarter of Northeast quarter of Sec. 30, Township 5 north, Range 26 east * * *."

The defendant filed a motion to suppress, which was overruled, and the overruling of said motion is assigned as error.   The defendant testified in support of his motion, and the state in opposition used Jack Craig, sheriff of LeFlore county, and Bill Pickle, deputy sheriff.

The defendant testified that he was 28 years of age and had lived in Booneville, Arkansas, all his life.   That on June 2, 1949, he was taken into custody by the sheriff of LeFlore county, Oklahoma, at Heavener, after he had driven his pickup truck into the driveway of the Relax Courts, parked and left the same.  Said he:

"And I got out and got one case out—a sealed box—and went into the side door of the office, and I heard a car pull in, and I just went on out at the other side door, and when I got back around there the three cases that I left in the truck were already gone.  The sheriff had picked them up and put them in his car, and one of the deputies said to me, said, 'I'll take that one you have got there,' and he took it away from me and put it in the car and put me in the car and brought me to Poteau."

Defendant further testified that the officers did not serve a warrant of arrest or search warrant on him.

On cross-examination he stated that he had transported the liquor from Louisiana, three cases of Four Roses and one of Seagram's Seven Crown, and had it to sell to any one who would purchase it.   He stated that the seals on the boxes had not been broken and while the word "Whiskey" was printed on the cartons that the three boxes in the pickup were so placed that the lettering

could not be read without moving the cartons. He stated that the officers drove up just as he was going into the office door at Frank Ward's.

Sheriff Craig testified that he was sitting in the drive-way in front of Burnett's store about three or four blocks south of Heavener when he saw the defendant pass. This was early on the morning of June 2, 1949. Witness stated that he and his deputies got in his car and commenced following defendant, who turned in at the Relax Courts, operated by Frank Ward, and that when they drove up witness saw defendant standing at the office door with a case of whiskey in his arms; that the box was unopened and marked "Four Roses", and that as defendant went out another door with the case still in his arms deputy Bill Pickle took the box. He stated that the boxes in the truck were plainly visible. Said he: "The other cases in the truck were slid around and you could plainly see it said 'whiskey', three cases of Four Roses and one of Seagram's Seven Crown." That he advised defendant he was arresting him for transporting whisky.

Bill Pickle, deputy, testified substantially as had the sheriff. He stated that the whisky was in cardboard boxes which were all sealed, but that the word "whiskey" was on each box and the brand was also stamped on each box, and that the place where the boxes were being delivered had the reputation of being a place that handled liquor.

After the motion to suppress was by the court overruled the case came on for trial before a jury the same day. At trial the defendant did not testify. Sheriff Craig and Deputy Pickle testified substantially as on motion to suppress, except the sheriff stated that he had not known the defendant previous to the arrest, but had been trying to apprehend a truck that had been hauling whiskey to the Relax Courts, and followed defendant. The evidence did not develop whether either of the two deputies who were with the sheriff were acquainted with the defendant or not, or whether it was the load in the defendant's truck that attracted their attention. It was brought out that the defendant had been admitted to the office part of the courts by Frank Ward, and that the truck had been parked close by and that it had no end gate though it did have side boards, but that the boxes were plainly visible and the lettering visible on the boxes as the officers drove up behind the truck.

Garland Dickerson, deputy, who did not testify on motion to suppress, testified substantially as had the other two officers, but stated that he followed the defendant into the office of the courts, and that while defendant was trying to get in the door he read the word "whiskey" on the cardboard box and therefore followed him in, but that defendant did not stop but went out by a side door right up to deputy Pickle, who was waiting outside.

Counsel for defendant first contend that the motion to suppress should have been sustained by the trial court, and that the court's action in overruling the same constitutes reversible error.

In the case of Griffin v. State, 90 Okla. Cr. 90, 210 P. 2d 671 (and see cases cited therein), we held:

"Because of the stringent laws against misbranding of merchandise and counterfeiting of labels (Tit. 78 O. S. 1941) there is a legal presumption that a package contains the merchandise labeled thereon, where the package is a sealed, unopened pastboard carton, in the same condition as it came from the manufacturer of the product.

"Where policemen while patrolling city streets see the automobiles of two recognized whiskey dealers stopped side by side on city street, and one

whiskey dealer passes to the other an unopened, sealed, pasteboard carton, containing the words 'whiskey' and the name of the distillery stamped thereon in large recognizable letters, a crime is committed in the presence of the officers which authorized the arrest of the whiskey dealer, and the search of his automobile without a warrant."

The Per Curiam opinion in the Griffin case supplanted an opinion dated October 12, 1949, by the present writer. It was decided that the cases of Lawson v. State, 84 Okla. Cr. 396, 182 P. 2d 786, and Washington v. State, 60 Okla. Cr. 316, 64 P. 2d 926, were inapplicable. In the Lawson case the officer saw a truck drive up to defendant's place and defendant took a cardboard box in his arms and started toward his home, and the officer called to him to stop and he walked up and took the box and it had whiskey in it. The officer stated that the lid to the box was torn and that he could not read the word "whiskey" on the box or see the contents until he had caused the defendant to stop and had walked some 40 steps up to him.

In the Washington case the officers were on the highway inspecting lights and brakes and as the defendant drove by it was observed that the turtleback of his car was not fastened and when the car hit a bump it bounced up and an officer observed a box in the back marked "whiskey". To confirm his conclusion the officer had to thereafter search the car. The driver was not a known whiskey man, and the statement does not show that the box was a sealed box. The driver had done nothing to indicate that he was in the process of delivering whiskey. But this was certainly a very close case.

In the Griffin case one known bootlegger was observed to be delivering sealed pasteboard boxes from one car to the car of another known bootlegger. The weak place was the testimony of the officer that he could read the word "whiskey" on the box he saw being transferred when he was in a jeep travelling at a high rate of speed and immediately on rounding a corner. The cars were parked close together and thirty to fifty feet from the corner and defendant fell out of the car to the ground when the jeep was suddenly stopped eight to ten feet back of the parked cars. It was argued, not without merit, that under the facts as recited by the officer that it was a physical impossibility for the officer to have been able to read the word "whiskey" particularly in view of the smallness of the lettering. This court, after much deliberation, decided that the statement by the officer made under oath, that he did read the word "whiskey" on the box prior to the search was not inherently and conclusively impossible, so that the rule in the case of Mitchell v. State, 73 Okla. Cr. 184, 119 P. 2d 99, was applied, and being to the effect that where there is competent evidence in the record reasonably tending to support the findings of the court in connection with a motion to suppress that this court will not reverse the trial court.

In the within case the defendant did not deny but that the officers could read the lettering on the box that he had in his arms, and though he stated that the other three boxes in the truck were so arranged that the lettering could not be seen without moving the boxes, the uncontradicted evidence is that the truck did not have an endgate and the three officers testified that the boxes had separated and that the word "whiskey" and the brand of whiskey in the respective boxes could be read and was read by the officers prior to the arrest of the defendant with the one box in his arms and after taking possession of the three boxes in the pickup found without a search. And one of the officers followed the defendant into the cabin office to arrest him, but he walked out another door into the arms of a second officer. The sheriff in the meantime took possession of the three boxes left exposed and in plain view in the pickup.

Counsel seek to distinguish the Griffin case from the within case by the statement: "We do not consider and understand the case to hold that the necessity of the arrest is eliminated before the search can be made, or the property seized from either the person of the defendant, his automobile, truck, premises or other immediate - surroundings." They point out that the defendant was not arrested until after the sheriff had already taken possession of the three boxes of liquor left in the pickup. It is true in the Griffin case, and in other of the cases cited by counsel for defendant, that the accused was arrested prior to search. In the within case a search was not necessary for the discovery of the liquor. The officers had a right to be watchful and observe vehicles thought to be on the way to a place known to them to be a place handling liquor. In many cases decided by this court and where the accused owner was not present and where whiskey had been discovered without search, as where the same was exposed to their view, the convictions were upheld. Officers happening to come upon contrabrand in open view are not precluded from taking possession of the same just because the owner is not present, or may have abandoned the same. See Sands v. State, 36 Okla. Cr. 55, 252 P. 72; and Uhles v. State, 94 Okla. Cr. 167, 232 P. 2d 413, just recently decided by this court.

In the first case we said:

"The mere looking into an automobile and there seeing intoxicating liquor, which is not concealed, and which requires no search to discover, is not an illegal search within the meaning of the law and Constitution making illegal a search without a valid search warrant."

It is next contended that the court committed fundamental error in giving the jury instruction No. 1, as follows:

"You are instructed that the section Title 37 of the Oklahoma Laws under which the defendant is being tried, makes it a misdemeanor for any person, individual or corporate, to ship or in any way convey any spirituous, vinous, fermented or malt liquor, or imitation thereof, or substitute therefor, except as in the Statute provided; and you are instructed that the offense charged in this informtaion, does not come within the exception set forth in the Statute."

They state that it is defective in that the court failed to inform the jury that to justify a conviction for transporting intoxicating liquor the state must prove that the defendant "conveyed such liquor from one place within the State to another place therein" as provided by Tit. 37 O. S. 1941 § 1. It is claimed that none of the other instructions cured the defect.

We have carefully read all the instructions and find that the court in stating to the jury the offense charged, fully advised the jury as to the substance of the allegations set forth in the information, among which was the allegation that the defendant was charged with the unlawful transportation of the liquor in question, listing it, "from some point in the State of Oklahoma, unknown to the county attorney, to a two-story brick tile building located in the Northwest corner of Lot 7, in the Frank Ward Addition to Heavener, Oklahoma," etc.

In instruction No. 2, the jury was instructed in substance that if they believed from the evidence beyond a reasonable doubt, that the defendant did, in LeFlore county, on June 2, 1949, "commit the offense as charged in the information" then the jury should find the defendant guilty as charged in the information. In instruction No. 3, the jury was advised that if they entertained a reasonable doubt as to the guilt of the defendant, "as charged in the information", then they should acquit him. In instruction No. 4, they were in-

structed that the defendant was presumed to be innocent of "the offense charged in the information, and each and every material ingredient thereof", and that such presumption should continue until overcome by competent evidence sufficient to convince the jury of defendant's guilt beyond a reasonable doubt.

While the court should have in an instruction detailed specifically what facts were necessary to be established in order to justify a verdict of guilty, yet the jury could not help but understand from reading and considering the instructions as a whole, that it was necessary for the state to establish not only that the defendant possessed the whiskey charged but that he transported it from some unknown place in Oklahoma to the Frank Ward Addition to Heavener, Oklahoma.

Here counsel for defendant submitted no different instructions. The evidence was definite and uncontradicted. It is clear that the alleged error in the instructions did not materially affect the rights of the defendant to a fair and impartial trial, and the giving of instruction No. 1 did not prejudice his rights.

In the very recent case of Owens v. State, 93 Okla. Cr. 156, 225 P. 2d 812, 813, we said:

"In charging the jury, the court must state to them all matters of law which it thinks necessary for their information in giving their verdict. If counsel for defendant are of the opinion that additional instructions should be given to the jury, it is their duty to reduce them to writing, submit them to the trial judge, and request that they be given. If they fail to do this, a conviction will not be reversed unless the court is of the opinion, in the light of the entire record and instructions of the court, that by the failure of the trial court to instruct the jury upon some material question of law, the defendant has been deprived of his substantial rights."

And in Cowley v. State, 65 Okla. Cr. 479, 88 P. 2d 914, 915, we said:

"An instruction improper and erroneous will not be held reversible error where it is manifest, on consideration of all the instructions given, the undisputed facts, and the verdict of the jury, that such an instruction did not work to the prejudice of the defendant, or deprive him of any substantial right."

See, also, Stroud v. State, 82 Okla. Cr. 124, 167 P. 2d 80.

Counsel finally argue that the case should be reversed because the county attorney, in his closing argument to the jury, mentioned the fact that the defendant did not testify in his own behalf. That, ordinarily, would be reversible error and we have carefully searched the record. The following is the record:

"Mr. Windham: The defendant now states in open court in the presence of the Judge and the Jury and the County Attorney of LeFlore County, Oklahoma, that the County Attorney has just referred to the fact that the defendant did not testify in his own behalf, and for that reason he was precluded from raising the question of his character, and the defendant now requests the Court to declare a mistrial and release the jury from further consideration of this case, because it is prejudicial error to mention the fact that the defendant did not testify in the presence of the jury.

"Mr. Foster: I wish to make a statement. Whatever statement the County Attorney made was made because the defense attorney said we didn't prove the defendant had a bad character, or had been convicted of any other offense, and the county attorney stated they didn't put his character in evidence and we couldn't put it in evidence.

"The Court: Let the record show that the motion is denied and the jury is instructed not to consider any statement made by counsel as to the character of the defendant. That is not in issue in this case.

"Mr. Windham: Defendant excepts to the refusal of the Court to declare a mistrial and excuse the jury for the reason that the county attorney stated that the defendant did not testify in the case, for the reasons stated."

The statement made by the county attorney appears to have been in reply to some remarks made by defense counsel in his argument to the jury. A sufficient record was not made to advise this court just what comments were made by the county attorney. The language could have been set out in detail and argued on motion for new trial, and the record as to the details of the remarks might have been narrated, where the reporter did not make a record, and submitted to the trial court at time of settling case-made and the truth of the record so submitted, determined. See Ridenour v. State, 94 Okla. Cr. 92, 231 P. 2d 395.

In the case of Chesser v. State, 63 Okla. Cr. 84, 73 P. 2d 191, 197, we said:

"Ordinarily, error cannot be predicated upon mere unexplained excerpts from the remarks of counsel to the jury. Enough must appear of record to advise the appellate court of what preceded the alleged objectionable remarks and their meaning to be deduced from the context, whether or not they were invited or provoked by remarks made by opposing counsel."

See, also, Rainey v. State, 71 Okla. Cr. 1, 107 P. 2d 371; Teague v. State, 58 Okla. Cr. 239, 52 P. 2d 91.

For the reasons stated, the case is affirmed.

BRETT, P. J., and JONES, J., concur.