## JONES v. STATE.

No. A-11546. June 18, 1952.

(245 P. 2d 756.)

Percy Hughes, Hobart, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Fred Hanson, Asst. Atty. Gen., for defendant in error.

JONES, J. The defendant, Beulah Mae Jones, was charged by an information filed in the county court of Tillman county with the unlawful transportation of whiskey; was tried, convicted, and sentenced to serve 30 days in the county jail and pay a fine of $100.

In her appeal from said conviction the only issue presented is whether the court erred in overruling the motion to suppress evidence which was presented by counsel for defendant prior to the commencement of the trial.

At the hearing on the motion to suppress evidence counsel for defendant used four witnesses. Lee Sardis and R. E. Morriss, highway patrolmen, testified to substantially the same facts as follows: In accordance with their duty as patrolmen, about 10:00 o'clock p. m. on October 5, 1949, they were patrolling U. S. Highway 183 south of the town of Davidson in Tillman county near the Texas boundary line. They had just turned around and started back toward the town of Davidson when an automobile passed them. The automobile was not being operated in a negligent manner nor at an excessive rate of speed. The patrolmen were proceeding in the same direction as the automobile which had passed them, about 100 yards behind the automobile at a speed of about 50 miles per hour. The State Highway Commission had posted signs at the south edge of Davidson and at the north edge of town setting forth that the speed limit through the city limits was 35 miles per hour. The new motor vehicle code for the State of Oklahoma had been in effect for about two months and all highway patrolmen in the state, including troopers Sardis and Morriss, had been instructed to give courtesy warning tickets to first violators of the code in order to familiarize them with its provisions. Pursuant to the provisions of the code, Tit. 69 O. S. 1951 §§ 49, 50, the State Highway Commission had erected signs, as above stated, at the entrance to the town of Davidson fixing the speed limit through the town at 35 miles per hour. The patrolmen testified that the car in front of them was going about 50 miles per hour through the town and they speeded up, turned on their red light, sounded their siren, and stopped the automobile for the purpose of giving the driver a courtesy warning ticket. The patrol car parked about 15 feet to the rear of the automobile which was being driven by defendant. Trooper Sardis emerged from the patrol car and met defendant at the rear of her automobile. He told her of the speed limits under the new traffic code and wrote out a warning courtesy ticket for her. After the conversation was finished the defendant turned to enter her car and the patrolman turned to go back to his automobile. As the patrolman turned to leave he saw several bottles of whiskey sticking up above the window of the automobile. He then called to his fellow trooper, and defendant was arrested. Her car was searched after driving it back to the county seat, and 192 pints of intoxicating liquor were found. The bottles of whiskey which they saw were securely capped and a revenue stamp affixed at the top of each bottle. They were in cases with the word "whiskey" plainly written on the side of the case. Neither of the patrolmen knew the defendant, nor had they ever heard of her.

Beulah Mae Jones and Bob Floyd also testified. Floyd and his wife were in the front seat with defendant at the time she was stopped by the patrolmen. Their testimony was substantially the same as that related by the patrolmen.

The defendant testified:

"Q. Did Trooper Sardis get out of his car? A. He met me at the back of my car. Q. Where was his car parked? A. Behind me. Q. Did he leave the lights on? A. Yes. Q. What did he say to you? A. He told me he stopped me because I was speeding. I said I didn't know I was that I didn't see the sign. He talked about driving too fast through speed zones and said he had a lot of trouble with people not obeying speed zones, this, that and the other. * * * Q. Did he tell you you could go on? A. He started to get back in the car and I heard him say 'look here, Morriss'. Q. Did he have a flashlight in his hand? A. Yes. Q. He turned it on when he came back to the car—he flashed it in the back of the car after he turned away? A. Yes. Q. That was after he said you could go on? A. Yes. Q. The liquor he testified to was actually in the car

was it? A. Yes, it was there. Q. Was there any boxes open? A. No, there wasn't any box open. Q. Where was the liquor setting? A. In the back of the car. Q. In the floor or in the seat? A. It wouldn't all set in the floor. It was stacked in the seat and the floor."

It was the contention of defendant that the patrolmen acted unlawfully when they stopped defendant and searched her automobile; that if the state highway commission had adopted a regulation fixing the speed limit in the town of Davidson at 35 miles per hour that such regulation would have been void for the reason that any legislative act empowering the commission to promulgate rules for the safety of traffic on the highways would be unconstitutional as an unwarranted delegation of the legislative function. Citing Sheppard v. Scrivner-Stevens Co., 191 Okla. 112, 127 P. 2d 159.

However in the case of Ex parte Herrin, 67 Okla. Cr. 104, 93 P. 2d 21, 26, this court held:

" 'So long as a policy is laid down and a standard established by a statute, no unconstitutional delegation of legislative power is involved in leaving to selected instrumentalities the making of subordinate rules within prescribed limits and the determination of facts to which the policy as declared by the Legislature is to apply.' "

The Supreme Court of Oklahoma has also stated that the power to determine the law's policy is primarily legislative, and cannot be delegated, but the power to make rules of subordinate character to carry out that policy and apply it to varying conditions, though partaking of legislative character, is in its dominant aspect administrative and delegable. Associated Industries of Oklahoma v. Industrial Welfare Commission, 185 Okla. 177, 90 P. 2d 899; Rush v. Brown, 187 Okla. 97, 101 P. 2d 262.

Under the provisions of 69 O. S. 1951 § 50, supra, it is provided:

"the State of Oklahoma shall have authority, coexistent with such city or town, to make regulations governing the use of said highways, and, together with said city or town, shall have the power to police all such highways, and provide and regulate the erection and placing of proper highway safety devices, lights, signals and signs on such highways."

Irrespective of any merit there might be to the contention of counsel that the Highway Commission would be without authority to fix speed limits, still, as the administrative agency of the state charged with the control of the highways under the provision of the above statute, they would have the authority to place warning devices and safety signs at various places on the highway for the protection of the traveling public. The authority to place these traffic signs upon the state highways would not be an illegal delegation of legislative authority. It could not be expected that the Legislature could at all times be in session and ready to erect signs for the many roads that are being built and maintained in the state. It is necessary under the police power of the state for the regulation of traffic and the safety of the persons who use the highways to create an administrative agency, such as the highway commission, to carry out ministerial acts by placing warning signs and safety devices and signals and other signs upon the highways.

The Legislature has further provided that it shall be the duty of the state highway patrol to "regulate the movement of traffic on the roads of the State highway system". 47 O. S. 1951, § 366, paragraph 10.

It is our conclusion that the patrolmen had the legal right to stop the defendant when she was driving fifty miles per hour through an incorporated

town and warn her concerning the driving of her vehicle through the city or the town at such an excessive speed. After giving her the courtesy warning it was only by coincidence that the intoxicating liquor was discovered by the officer. This was not one of the situations to which our attention has been called in some cases, where the officers used a subterfuge for the purpose of entrapping and searching a known bootlegger. In the recent case of Roberts and Harrington v. State, 94 Okla. Cr. 255, 245 P. 2d 759, this court held:

"Where officer sees a person violating the intoxicating liquor law at a place where the officer has a legal right to be, the officer may without a warrant arrest the person and search his person and immediate possessions for intoxicating liquor."

In the case of Walls v. State, 94 Okla. Cr. 255, 234 P. 2d 916, 919, this court quoted from the case of Sands v. State, 36 Okla. Cr. 55, 252 P. 72, as follows:

" 'The mere looking into an automobile and there seeing intoxicating liquor, which is not concealed, and which requires no search to discover, is not an illegal search within the meaning of the law and Constitution making illegal a search without a valid search warrant' ".

The case is affirmed.

BRETT, P. J., and POWELL, J., concur.