## BARNES TAYLOR v. STATE.

No. A-5039. Opinion Filed April 9, 1927.
(255 Pac. 158.)

See, also, 36 Okla. Cr. 367, 254 P. 758.

Cress & Tebbe, for plaintiff in error.

Edwin Dabney, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

DAVENPORT, J. The plaintiff in error, Barnes Taylor, hereinafter called the defendant, was charged with contempt of court in Noble county, by an application filed on the 18th day of August, 1923, asking for a citation to issue commanding the defendant to show cause why he should not be fined for contempt of court. Citation was issued and served on defendant, the defendant appeared and filed his motion to quash the application, and the motion was overruled, and defendant reserved an exception. The defendant also filed a demurrer, which demurrer was by the court overruled, and defendant excepted.

The application charged:

"That on the 22d day of December, 1922, the district court granted a temporary injunction, enjoining and restraining the said defendant, Barnes Taylor, his agents, employees, servants, successors, and assigns, and all other persons from keeping, maintaining, carrying on, and operating, or permitting to be kept, maintained, carried on, or operated, at, in, upon, or about a certain building and premises in the city of Perry, Okla.; and charging that, on the 26th day of December 1922, the said defendant broke open and entered said building and premises, and have since maintained, carried on, and operated, at, in, upon, and about the said building and premises, and has had in and upon said premises choc beer and other intoxicating liquor, or imitations, or substitutes therefor, with the unlawful intention and for the purpose of selling, bartering, giving away, and

otherwise furnishing the same to other persons, contrary to the prohibitory laws of the state, and in violation of said injunction."

The defendant entered his plea of not guilty. Defendant was tried and jury returned a verdict finding defendant guilty. Motion for a new trial was filed and overruled, and defendant excepted; also motion in arrest of judgment was filed and overruled, and exceptions duly saved. On the 29th day of October, 1923, the court, upon the verdict of the jury, sentenced the defendant to pay a fine of $500 and to be imprisoned in the county jail of Noble county, at hard labor for a period of 6 months.

To reverse this judgment, this defendant has appealed to this court, and has assigned twenty-one errors alleged to have been committed by the trial court. The state called several witnesses, who attempted to show that the defendant in this case had violated the terms of the injunction by selling, bartering, giving away, or furnishing of the things prohibited to be kept on the premises described in the restraining order and mentioned in the application for a rule on the defendant to show cause why he should not be guilty of contempt.

The record discloses that the premises and building covered by the injunction was the home of the defendant, Barnes Taylor. The state urges with a great deal of force the fact that, after the restraining order was granted, Barnes Taylor returned to his home and entered the building and slept in the building at nights; that his action in so doing was a willful violation of the restraining order. The state called several witnesses and attempted to show defendant had willfully and intentionally violated the terms of the injunction by permitting people to congregate in and around the premises, and by permitting choc beer, whisky and other

drinks to be sold on the premises. Neither of the witnesses for the state attempted to say that the defendant at any time after the granting of the injunction sold any choc beer or anything else to the witness. A number of the witnesses testified to people going back and forth on the premises where the defendant's home had been.

Clyde Smith, a witness called by the state, testified that he was selling watermelons, and that he went by the premises, and that he bought a half pint of corn whisky from a negro woman; that he went into the woodshed with her, and that some improper suggestions were made, and that he went away and found that, after he had been out with this negro woman, he had lost $19; that he had been associating with this negro woman and lost his money, and it would seem from the record that he had become angered at her, and was ready to swear to most anything that was necessary to try to convict this defendant.

Other state witnesses claim to have bought some choc beer from a negro boy who was around the premises. The only evidence introduced by the state tending to show that the defendant had any knowledge that anything was being sold in the neighborhood of the place where he had been enjoined from permitting the manufacturing, bartering, or selling of intoxicants or substitutes therefor was the statement that the defendant came to the house after two of the witnesses claim they had bought some choc beer, and was drinking the same when the defendant came.

The testimony of the state witnesses shows that defendant was advised if he did not permit any law violation that it would be all right for him to sleep in the house. There is no positive testimony in the record to show that the defendant had knowingly or

willfully violated the terms of the restraining order, or knowingly permitted others to violate it. The testimony on behalf of the defendant is that at no time after the restraining order was issued were there any sales of choc beer, whisky, or any other kind of drinks, in violation of the prohibition laws of the state, sold, or permitted to be sold, by the defendant, in, or about, or on the premises described in the restraining order.

The testimony on behalf of the defendant shows that he had slept in the house. He was advised by the deputy sheriff and county attorney, after a consultation, that it would be all right for him to do so. The restraining order in this case was a drastic measure and required the defendant to remain from his own home. The defendant says that only two of the five doors of the house were fastened by the officers, and that the others were left open; that he went back and forth to his home and slept in a room; that he so advised the deputy sheriff and county attorney, and they told him it would be all right, provided he did not violate the prohibition laws.

Defendant called several other witnesses, each of whom testified they had not seen any violation of the restraining order by selling, bartering, or giving away of any whisky, or any other kind of intoxicating drinks.

The record in this case is voluminous, and many questions are raised, and many assignments of errors urged by the defendant as to why this case should be reversed. An examination of the record shows that many of the objections by the defendant in the trial court were well taken, but in the view we take of this case it is only necessary to consider the nineteenth and twenty-first assignments of errors, which are as follows:

"(19) That the verdict is contrary to the evidence."

"(21) That the court erred in refusing to direct a verdict of acquittal."

The assignments hereinabove set out relate to the sufficiency of the testimony in this case to warrant the jury in rendering a verdict of conviction against the defendant. It is the duty of all parties to obey and respect an order of the court, and, when the same is knowingly and willfully violated, it is the duty of the court, in order to protect its dignity, to cause any violator to be brought into court to show cause why he should not be adjudged in contempt, but, in so doing, before he should be convicted and sentence imposed upon him, there should be competent testimony sufficient to warrant a conviction. The record in this case has been carefully briefed by both sides. A careful examination of the evidence in this case only tends to create suspicion or a possibility that the defendant may be guilty of contempt, and a verdict based upon a possibility and supposition is not justified. Where there is evidence to support a verdict, this court will not pass upon its weight and sufficiency in order to determine whether the defendant is guilty as charged, but we do hold there must be evidence tending to support the essential allegations of the charge.

In this case there is no evidence to show that the defendant himself willfully and knowingly violated the terms of the restraining order, nor is there any evidence whatsoever that he knowingly permitted others to violate the terms of the restraining order, nor is there any evidence tending to show that he had any knowledge of the violation of the restraining order. The evidence is insufficient to sustain the verdict and judgment.

The judgment is reversed and remanded.

DOYLE, P. J., not participating.

EDWARDS, J., concurs.