## LEE KRATZ v. STATE.

No. A-8272.   Jan. 9, 1932.
(6 Pac. [2d] 1076.)

C. B. Leedy, for plaintiff in error.

J. Berry King, Atty. Gen., for the State.

DAVENPORT, P. J. The plaintiff in error, hereinafter referred to as the defendant, was by information charged with stealing and carrying away one Hereford steer coming three years old. The jury returned a verdict against the defendant finding him guilty of stealing a domestic animal, and leaving his punishment to the court. The court sentenced the defendant to imprisonment in the state penitentiary for a period of seven years and to pay all costs of the prosecution; from which judgment the defendant appeals.

The testimony on behalf of the state tends to show the steer alleged to have been stolen belonged to Houx Brothers, and was in charge of Bruce Campbell; Houx Brothers had 179 head of two and three year old steers in two large pastures, each pasture containing from nine to eleven sections of land, and adjoined the Clyde Campbell ranch in Ellis county, Okla. The pasture fences were poor, and some of the Houx cattle were out in different pastures; several head being in the Caldwell pasture and rye field. The last of November and first of December, 1930, the testimony shows, there were 22 head of the Houx cattle missing; they had not searched the large pastures adjoining the pastures where the Houx cattle ranged. When the Houx Brothers went to ship their steers in March, 1931, they were eight short, but later one was found in an adjoining pasture.

The testimony further shows there were some cattle at the Mercer ranch with the Houx brand on them, but no one knew whether they were part of the cattle owned by Houx Brothers or not; it was further shown that it

was a daily occurrence to see from six to fourteen head of steers on the Caldwell ranch and in his rye field.

O. N. Metz, who lived within 200 yards of the feed lots and corral of Caldwell, saw the Houx steers in the pasture often. On December 4, 1930, Metz was in 200 yards of where they claim the animal was butchered, and knew nothing about it. The officers searched the Metz place and examined some hides; and also searched the Caldwell place and found some parts of the head and tail of an animal. When the defendant was released on bond, he brought and turned over to the officers the hide from the steer he butchered on December 4, 1930; the officers examined the hide and claim the hide was off an animal that did not have the Houx brand, in fact, it did not have a brand on either hip; the hide was clear. The testimony of the officers further shows that when the defendant was arrested he told them he had butchered his own steer.

There is no testimony to show Houx Brothers or Campbell had a steer stolen; they claimed at the preliminary trial they were short 22 head of cattle; at the trial in the district court they claim to have found all but eight head, and finally another one was found, reducing the number short to seven. The testimony shows they had not thoroughly searched all of the adjoining pastures to see whether or not the missing steers were there. The Houx cattle were branded "9" on the left hip. The officers claim to have found in the hog lot near where the defendant admitted he butchered the steer a part of the head of the butchered animal; that was all they could find around the place, they did not find any hide; they claim the defendant told them the hide was hanging on the corral fence near where he had butchered

the steer. The animal that was butchered was butchered at the Clyde Caldwell place; the defendant being a son-in-law of Caldwell, and was living with Caldwell at the time. The place where the animal was butchered was open where any one could come and go at will. The proof further shows that prior to the date of the alleged larceny a number of men handling cattle had visited the Caldwell place looking for cattle, and on several occasions the Houx cattle had been in the Caldwell pasture and rye field, and they had been driven north to a pasture where the Houx cattle ranged, and sometimes south to another pasture used by Houx.

The defendant contracted to deliver a beef to the merchant on a certain day, and when he brought the meat to town was arrested, and he stated to them he had butchered his own steer. There is no testimony to contradict this statement of the defendant. He had sold the merchant meat about a month prior to this time.

This is, in substance, all the testimony on behalf of the state. At the close of the state's testimony, the defendant filed the following demurrer:

"The defendant now demurs to the testimony and moves the court to instruct the jury to return a verdict of not guilty for the reason that the evidence taken as a whole and undenied fails to establish facts sufficient to warrant or sustain a conviction under the charge, and moves the court to direct the jury to return a verdict of not guilty. By the Court: I believe that demurrer and motion will be overruled. Mr. Leedy: Note the exception."

The defendant has assigned several errors. The only one it is deemed necessary to consider is that the court erred in overruling the defendant's motion for a new

trial and overruling his demurrer to the evidence and his motion for a directed verdict.

The defendant's argument is chiefly directed to the assignment that his demurrer and his motion for a directed verdict should have been sustained on the ground that the evidence is insufficient to sustain the allegations in the information. A careful analysis of the testimony contained in the record discloses only a suspicion or a possibility that the defendant is guilty. It has often been held by this court that, where there is evidence to support the verdict, it would not pass upon its weight or sufficiency in order to determine whether or not the defendant is guilty as charged, but that there must be evidence to support the essential allegations of the offense charged. Where there is no evidence but only a mere suspicion to support the verdict, or where the evidence is of such weak or inconclusive character that a conclusion of guilt may not be logically drawn from it, the judgment should be set aside. Owens v. State, 11 Okla. Cr. 113, 143 Pac. 204; Taylor v. State, 36 Okla. Cr. 419, 255 Pac. 158; Freeman v. State, 52 Okla. Cr. 209, 4 Pac. (2d) 120.

The evidence is insufficient to sustain the verdict and judgment. The cause is reversed.

EDWARDS and CHAPPELL, JJ., concur.