Dale Eugene ENGLER, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–12477.

Criminal Court of Appeals of Oklahoma.

Oct. 2, 1957.

Bamberger & McBride, Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam Lattimore, Asst. Atty. Gen., for defendant in error.

NIX, Judge.

The defendant was charged by information in the Court of Common Pleas with the offense of driving a motor vehicle while under the influence of intoxicating liquor; tried before a jury of six, who rendered a verdict of guilty, fixing the punishment at 30 days in the county jail and a fine of $250.

The defendant contends that the trial court committed error in permitting the state to prove in chief that the defendant had refused to submit to a "sobriety test." The testimony reveals that Patrolman Garibaldi was interrogated by the county attorney as follows:

"Q. Did you give this man a sobriety test of any type? A. No, I did not.

"Mr. Bamberger: If the Court please, we are going to object to that and ask that it be stricken and ask at this time for a mistrial. A very recent case holds that it is prejudicial error to ask that question in the presence of the jury. And we ask for a mistrial at this time.

"The Court: I will overrule your motion for a mistrial and allow you exceptions, and I will overrule your objection to the question and allow you an exception.

"Q. All right, you may answer the question, please.

"The Court: He answered it.

"Q. You did not give him a test? A. I did not give him a test, no, sir.

"Q. Did you offer one to him? A. I did.

"Mr. Bamberger: If the court please, we make the same objection and once again repeat our request for a mistrial.

"The Court: Overruled and allow exceptions.

"A. Repeat the question.

"Q. Did you offer him a test? A. I did.

"Q. What was his answer? A. He said he would see me in hell before he took one.

"Mr. Bamberger: If the court please, we renew our objection to the question and answer; we ask that it be stricken from the record and that the jury be instructed to disregard it and we ask the court to declare a mistrial in this case.

"The Court: Overruled and allow exceptions."

This same question was passed on by this court in the recent case of Duckworth v. State, 309 P.2d 1103, wherein it was said:

"In a criminal case, where the accused is charged with being intoxicated and is asked by the state to submit to an intoximeter test to determine the amount of blood alcohol, it is the accused's statutory right, 22 O.S.1951 § 701 to refuse to submit thereto. And, it is the mandatory duty of this court to reverse a conviction where the state is permitted to offer proof in chief showing the accused's refusal and the end results of such a test, had the accused submitted thereto, and to comment thereon."

The Duckworth case was handed down by this court with a divided opinion, Judge Brett and Judge Jones adopting the opinion, Judge Powell dissenting. Since then, articles have been written in legal publications discussing the pro's and con's of its soundness. It has been advocated that the legislature should enact legislation making it mandatory for all persons arrested for drunk driving to submit to a drunkometer test. A legislative committee was recently convened in Oklahoma City to witness a demonstration as to the accuracy of said tests for the purpose of considering proposed legislation to this effect. The tests were inconclusive and the mechanical apparatus being evidently fouled by a bad tube, reflected ridiculous results. The officer in charge of the demonstration was demoted as a result of what his superiors termed negligence in properly checking the equipment before said tests were given. In the opinion of your writer, this gave new strength to the holding in the Duckworth case. No doubt many persons arrested on suspicion of drunk driving would be hesitant, though stone sober, to submit to any one of the scientific or mechanical tests as it is well established that the test is no better than the operator of said equipment. The courts have so held in refusing to recognize the result of the numerous devices commonly known as "lie dector tests." The defendant may be reluctant to submit to such tests for good reasons other than his guilt. The majority of this court is of the opinion that such refusal should not be held against the defendant. If evidence of his refusal was admissible, it could very easily prejudice the defendant by leaving the impression with the jury that he refused, in order to conceal his guilt, which may be entirely erroneous. Mechanical devices, such as drunkometer tests, rely almost exclusively upon the honest efficiency of the operator, the cleanliness of the containers used, and upon the strength and effectiveness of the chemicals with which the test is made, as well as the mechanical condition of the equipment. Until their accuracy is more firmly established or legislative action is taken, a refusal to submit to such a test should not be permitted to work against the interest of the defendant. If the defendant voluntarily submits, the results may be introduced as evidence, but to refuse is within his constitutional rights and jurors should not be permitted to speculate by presumption or suspicion as to why he refused. For the reasons expressed by Judge Brett in the Duckworth case, and the additional reasons related herein, the rule adopted in said case is hereby applied as sound and logical law.

The state argues that the Duckworth case, supra, is not applicable for the reason the term "sobriety test" does not indicate what type of test offered. However, we do not consider this contention sound. The common and accepted tests now in use, such as drunkometer, intoximeter, balloon test, etc., are so frequently used that the general public is thoroughly conscious of their recognition and usage. The term "sobriety test" would draw the immediate conclusion that one of the numerous mechanical or scientific tests was referred to. We cannot, with good conscience, make a distinction between the terms as long as the inference is the same and the impression so obvious. We are of the opinion the set of facts in the case at bar comes squarely within the rule laid down in the Duckworth case and for that reason the case is reversed and remanded for a new trial in accordance with this decision.

BRETT, P. J., concurs.

POWELL, J., dissents.

POWELL, Judge (dissenting).

I cannot agree that the trial court erred in permitting the State to prove in chief that the defendant had refused to submit to a sobriety test.

By no stretch of the imagination could it be said that such proof requires an accused to testify against himself, any more than evidence by others of any other actions and conduct of an accused in connection with an offense with which he may stand charged.

I think the case of Duckworth v. State, Okl.Cr., 309 P.2d 1103, cited as authority for the present holding is basically unsound, and not supported by logic or reason. My views are set out in detail in the Duckworth case at pages 1106–1107, and 1109–1110 of the official Pacific Reporter.

The Duckworth case has been analyzed in an article by William J. Welch, Esq., appearing at pages 331–334 of the Oklahoma Law Review of August, 1957, Vol. 10, No. 3, entitled: "Criminal Law: Evidence: Effect of Comment on Refusal to Submit to Intoximeter Test". That article, too, points out the fallacy of the reasoning in the Duckworth case, and effectively.

Perhaps the Legislature taking official notice of the fact of the mounting deaths on the highways of this State caused by drivers who have partaken of alcoholic beverages, will enact legislation requiring as a prerequisite for the use of the State highways, all reasonable cooperation on the part of the travelling public in accepting scientific tests, where the question arises as to whether or not an involved driver is under the influence of opiates or alcohol.