Joe Dean SYNNOTT, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. M–73–71.

Court of Criminal Appeals of Oklahoma.

Oct. 29, 1973.

Tom A. Lucas, Norman, for appellant.

Larry Derryberry, Atty. Gen., Robert McDonald, Asst. Atty. Gen., for appellee.

## OPINION

BRETT, Judge:

Appellant, Joe Dean Synnott, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Cleveland County, Case No. CRM–72–1440, for the offense of Operating a Motor Vehicle While Under the Influence of Intoxicating Liquor in violation of 47 O.S.1971, § 11–902(a). He was sentenced to serve a term of ten (10) days in the county jail and a fine of twenty-five dollars ($25) in accordance with the verdict of the jury. A timely appeal has been perfected to this Court.

The nature of the errors urged for reversal of this case makes a summary of the evidence adduced at trial unnecessary.

The defendant contends in his first proposition that the court erred in admitting the results of a breathalyzer test for intoxication for the reason that such evidence was obtained in violation of his constitutional right under Article 2, Section 21, of the Oklahoma State Constitution which provides:

> "No person shall be compelled to give evidence which will tend to incriminate him."

He correctly states that this prohibition of the Oklahoma Constitution goes further then the analogous provision of the Fifth Amendment to the Federal Constitution in prohibiting non-testimonial evidence such as a chemical test for intoxication. *Compare* Cox v. State, Okl.Cr., 395 P.2d 954 (1964) *with* Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966).

The sole compelling influence to which defendant points is that he was not explicitly informed that the results of a breathalyzer test could and would be used against him in court. Thus, he asserts, he was insufficiently informed of the consequences of relinquishing his right to refuse to take that test and, hence, his consent cannot be said to have been voluntarily given.

In support of his contention, he cites the requirement set forth by the United States Supreme Court that prior to in-custody interrogation, an individual must not only be informed of his right to remain silent, but also afforded the explanation that anything he says can and will be used against him in court, Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and the case of Lorenz v. State, Okl.Cr., 406 P.2d 278 (1965), which held that a blood sample taken from an unconscious defendant violated his privilege against self-in-

crimination under the Oklahoma Constitution.

The fallacy of defendant's argument is that it presumes that the situation in which an individual is requested to consent to take a chemical test for intoxication is directly analogous to the situation in which an individual, in custody, is interrogated by the police, and that, therefore, in logic if not in law, before it can be found that the consent to be tested was voluntary and not the product of a coercive influence, it must be first shown that the defendant was given, in the specific context of that test, all the information required by the Miranda court. This is not true. There are in fact essential differences between the making of an oral statement and the taking of a chemical test which makes the giving of warnings precisely analogous to those set down in Miranda neither necessary nor practicable. Cf. Flynt v. State, Okl.Cr., 507 P.2d 586 (1973); Fritts v. State, Okl. Cr., 443 P.2d 122 (1968).

■ In the instant case the defendant was fully conscious at the time the breathalyzer test was given. The evidence at trial reveals that he consented to take that test only after the arresting officer had: 1) read to him the Miranda warnings; 2) ascertained that he understood those warnings; 3) told him he was under arrest for driving while under the influence of intoxicants and fully informed him of his rights and options under the law in regard to the taking of the chemical test, including his right to refuse to take either a blood test or a breathalyzer test.

This procedure was wholly adequate to protect the defendant's privilege under Article 2, Section 21, of the Oklahoma State Constitution and we find no merit in his contention that he was compelled to give evidence in violation of that provision.

■ The defendant further contends under his first proposition that the trial court committed reversible error in permitting evidence of the results of the breathalyzer test to go to the jury without having first conducted a hearing outside the presence of the jury on the question of the voluntariness of his consent to take that test. There was no error. The record reveals that no motion to suppress that evidence was filed and no request for an evidentiary hearing was made either prior to or during trial. See Davis v. State, Okl.Cr., 437 P.2d 271 (1968).

■ The defendant's next proposition is not supported by argument or citation of authority. We have previously held that it is necessary for the defendant to support his assertions of error by citations and authority. When this is not done and it is apparent that the defendant has been deprived of no fundamental right, this Court will not search the books for authority to support a mere assertion of error. Wolfenbarger v. State, Okl.Cr., 508 P.2d 694 (1973).

Defendant contends in his third proposition that §§ 11–902 and 756(c) of Title 47 of the Oklahoma Statutes are unconstitutional as a violation of the due process clause of the Fourteenth Amendment to the Federal Constitution and Article 2, Section 7, of the Constitution of the State of Oklahoma.

■ This is so, he first asserts, because 11–902(a) is arbitrary and unreasonably criminalizes innocent conduct because it does not explicitly state that the public must be endangered by the prohibited conduct. This contention is wholly without merit. It is readily apparent that this provision is designed to promote public safety by protecting members of the travelling public from those who while under the influence of intoxicating liquor attempt to operate an automobile on the highways of this State. This interest is sufficiently strong to justify regulation of the conduct under the police power of the State.

■ He next asserts that 11–902(a) is impermissibly vague and uncertain because it does not set forth a precise criteria of intoxication by informing the individual to what extent he must be under the influence of intoxicating liquor before his conduct may be held to have violated this provision. This vagueness, he contends, prevented his knowing what conduct was forbidden and

rendered him unable to prepare a defense to the charge against him. The concept that a facially vague statute is unconstitutional rests upon the constitutional foundation of procedural due process which requires in the interest of fundamental fairness adequate notice of what conduct is proscribed and adequate standards for the adjudication of the offense by judge and jury. If this statute is so obscure that men of common intelligence must necessarily guess at its meaning and differ as to its application, it is unconstitutional. See e. g. Connally v. General Construction Company, 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926); Baggett v. Bullitt, 377 U.S. 360, 367–368, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964).

■ On the other hand, only reasonable certainty is required, Winters v. New York, 333 U.S. 507, 68 S.Ct. 665, 92 L.Ed. 840 and it is elementary that the prohibited act may be characterized by a general term without definition if that term has a settled and commonly understood meaning which does not leave a person of ordinary intelligence in doubt. This is true although there may be in the definition of the term an element of degree as to which reasonable men might differ.

"The law is full of instances where a man's fate depends on his estimating rightly, that is, as the jury subsequently estimates it, some matter of degree." Nash v. United States, 229 U.S. 373, 377, 33 S.Ct. 780, 781, 57 L.Ed. 1232.

The condition of being under the influence of intoxicating liquor and its ordinary accompaniments are so much a matter of general knowledge that a definite and sensible interpretation may be given the words of the statute. Further, this Court has long approved the following definition of the term "under the influence of intoxicating liquor" in regard to the prohibition against operating a motor vehicle:

"If intoxicating liquor has so far affected the nervous system, brain or muscles of the driver of an automobile as to impair, to an appreciable degree, his ability to operate his car in the manner that the ordinarily prudent and cautious man, in

the full possession of his faculties, using reasonable care, would operate or drive a similar vehicle under like conditions, then such driver is 'under the influence of intoxicating liquor' within the meaning of the statute." e. g. Harrison v. State, 95 Okl.Cr. 123, 240 P.2d 459 (1952), Syllibi 1.

■ As § 11–902(a) does not deprive any person of the ability to determine whether an action contemplated thereunder is criminal or prevent his adequately defending against that charge by failing to set forth a precise criteria for being under the influence of intoxicating liquor, that section does not violate the due process clause of the Fourteenth Amendment of the Federal Constitution or Article 2, Section 7, of the Oklahoma Constitution.

■ Finally, under this third proposition, defendant asserts that 47 O.S.1971, § 756 makes no allowance for variations in body size, weight, construction, metabolism, sex, health or type of blood; fails to establish standards for testing a persons blood; and does not provide any means for determining the way in which public health or safety has been threatened by the percentage of alcohol in the blood. In consequence, he asserts, the presumption provided in that statute is not sufficiently related to the conduct of the defendant and is so vague and uncertain that he was unable to prepare a defense against it. This assertion is likewise without merit. We find no unconstitutional vagueness or ambiguity in that statute.

In his concluding proposition the defendant urges that the power granted to the Board of Chemical Tests for alcoholic influence by the Legislature in 47 O.S.1971, § 759 constitutes an unconstitutional delegation of authority. He states that giving that Board the power to determine how tests shall be conducted and what equipment shall be used delegates the power to determine what is and what is not a violation of the law. We do not see how this can be so.

It is true that the Legislature cannot delegate its power to create or define a crimi-

nal offense or any other fundamental legislative power. However, regulations governing a matter highly technical and scientific is perhaps the clearest example of what is properly an administrative and delegable function. In the case of Jones v. State, 95 Okl.Cr. 323, 245 P.2d 756 (1952), this Court said in the first paragraph of the syllabus:

> "1. The power to determine the policy of the state is primarily legislative and cannot be delegated, but the legislature may delegate the power to make rules of subordinate character for the purpose of carrying out that policy and apply them to varying conditions; and though such power partakes of legislative character, it is in its dominant aspect administrative and delegable."

We find the power delegated by Section 759 to be, in its dominant aspect, administrative and a proper matter for delegation by the Legislature.

For the above and foregoing reasons we are of the opinion that the judgment and sentence appealed from should be, and the same is hereby, affirmed.

BLISS, P. J., and BUSSEY, J., concur.