**Charles Curtis HARRIS Appellant,**

**v.**

**STATE of Oklahoma, Appellee.**

**No. F–87–965.**

Court of Criminal Appeals of Oklahoma.

May 9, 1989.

Nathan J. Gigger, Oklahoma City, for appellant.

Robert H. Henry, Atty. Gen., Susan Stewart Dickerson, Asst. Atty. Gen., and Lee S. McIntire, Legal Intern, Oklahoma City, for appellee.

## OPINION

BUSSEY, Judge:

Charles Curtis Harris, appellant, was tried by jury for the crime of Driving Un-

der the Influence of Intoxicating Liquor Subsequent Offense in violation of 47 O.S. Supp.1983, § 11–902 in Case No. CRF–87–1358 in the District Court of Oklahoma County. Appellant was represented by counsel. The jury returned a verdict of guilty and set punishment at five (5) years imprisonment. The trial court sentenced appellant in accordance with the jury's verdict. From this judgment and sentence, appellant appeals to this Court.

■ Appellant first contends that there was insufficient evidence to support the charge that he was Driving Under the Influence of Intoxicating Liquor. It is well-settled that, after reviewing the evidence in the light most favorable to the State, we must decide whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Spuehler v. State,* 709 P.2d 202, 203 (Okla. Crim.App.1985).

At approximately 11:30 p.m. on March 16, 1987, Officer Donell Matthews and his partner Officer Richard Earl Wright of the Oklahoma City Police Department observed a vehicle without its headlights on, back out into the street at a high rate of speed. Officer Matthews testified that he swerved his patrol car to avoid having an accident. The vehicle proceeded to drive away. As the officers pursued the vehicle, they observed it crossing the center line. Officer Matthews turned on his overhead equipment and pulled the vehicle over.

Officer Matthews approached the vehicle and asked the appellant, who was driving, for his driver's license. Officer Matthews testified that he could smell alcohol on appellant's breath. Furthermore, both officers observed the appellant to be unsteady on his feet, his bloodshot eyes and his slurred speech. We find that a rational trier of fact could have found the elements of the crime charged beyond a reasonable doubt.

Appellant next contends that he was denied his Sixth Amendment right to effective assistance of counsel. Appellant cites two reasons for his claim of ineffective assistance. First, appellant complains that the voir dire, opening statements and closing arguments were not requested by trial counsel to be stenographically reported. However, appellant has cited no authority that this constitutes ineffective assistance of counsel. *See Foster v. State,* 742 P.2d 1131, 1135 (Okla.Crim.App.1987). This Court will not search for authority to support appellant's proposition.

■ Secondly, appellant complains of trial counsel's failure to object to testimony given by the two arresting officers that the appellant had refused to submit to the breathalyzer test. Specifically, appellant contends that such failure to object waived reversible error. *See Tilley v. State,* 511 P.2d 586 (Okla.Crim.App.1973). We disagree.

We find that our unanimous decision in *State v. Neasbitt,* 735 P.2d 337, 338 (Okla. Crim.App.1987) is controlling on this issue. In *Neasbitt,* we held that 47 O.S.Supp.1987, § 756, which allows admission of evidence of one's refusal to take a sobriety test, meets constitutional muster according to both the Oklahoma and United States constitutions. It is a lawful penalty to use evidence that a driver refused such a sobriety test. It is not an act coerced, and is not protected by the privilege against self-incrimination. *Id.* at 338. *See also South Dakota v. Neville,* 459 U.S. 553, 565 103 S.Ct. 916, 923, 74 L.Ed.2d 748, 759 (1983), wherein the Supreme Court stated, "... we do not think it fundamentally unfair ... to use the refusal to take the test as evidence of guilt, even though [the defendant] was not specifically warned that his refusal could be used against him." (emphasis added). Insofar as the following opinions are inconsistent with this opinion, they are expressly overruled: *Duckworth v. State,* 309 P.2d 1103 (Okla.Crim.App.1957); *Engler v. State,* 316 P.2d 625 (Okla.Crim.App. 1957); *Jackson v. State,* 397 P.2d 920 (Okla.Crim.App.1964); *Gay v. State,* 449 P.2d 906 (Okla.Crim.App.1969); *Simmons v. State,* 485 P.2d 489 (Okla.Crim.App.

1971); *Martin v. State,* 487 P.2d 1179 (Okla.Crim.App.1971); *Morris v. State,* 497 P.2d 1108 (Okla.Crim.App.1972); *Sloan v. State,* 503 P.2d 580 (Okla.Crim.App.1972); and *Tilley v. State,* 511 P.2d 586 (Okla. Crim.App.1973); and *Synnott v. State,* 515 P.2d 1154 (Okla.Crim.App.1973). Insomuch as the admittance of this evidence was not error, we cannot say that trial counsel's failure to object was ineffective assistance. This assignment lacks merit.

Finally, appellant contends that the trial court erred in admitting into evidence the judgments and sentences of appellant's former convictions. Specifically, appellant contends that there was no proof that the appellant had effective assistance of counsel or had waived the same at the time of the convictions.

Initially, we note that a former conviction is proven by the introduction of a properly certified judgment and sentence along with proper identity of the person. *Stinson v. State,* 739 P.2d 541, 542 (Okla. Crim.App.1987). The record in the present case clearly shows that the appellant had been represented by counsel. (State's Exhibit Nos. 1–4). Moreover, prior to the second stage proceedings, appellant and the State entered into a stipulation concerning the prior convictions. (Tr. 54). Finally, when the exhibits were introduced into evidence, appellant did not object. (Tr. 56). We find no error.

For the foregoing reasons, the judgment and sentence is AFFIRMED.

BRETT, P.J., and LUMPKIN, J., specially concur and file opinions.

LANE, J., concurs.

PARKS, V.P.J., dissents and files an opinion.

BRETT, Presiding Judge, specially concurring:

I specially concur in this decision for the reason that the 47 O.S.Supp.1987, § 756, now makes the evidence admissible and for the reasons stated in *State v. Neasbitt,* 735 P.2d 337, 338 (Okl.Cr.1987).

LUMPKIN, Judge, specially concurring:

I specially concur in this case for the reasons set forth below.

Judge Bussey in *State v. Thomason,* 538 P.2d 1080 (Okl.Cr.1975) artfully analyzed the issue of the proper interpretation of Article II, § 21 of the Oklahoma Constitution. This exhaustive analysis of the terminology and intent expressed by that constitutional provision should be our guide in examining the issues in the present case. I cannot agree with the dissent that Article II, § 21 of the Oklahoma Constitution could, under some circumstances, be broader in scope than the Federal Fifth Amendment. Either the terminology should be literally applied in all circumstances or defined as this Court has set forth in *Thomason.* A literal interpretation would mandate that this Court's rulings as to the admissibility of blood tests, fingerprints, writing exemplars, lineups and any other incident when a defendant is compelled to produce himself or other evidence must be vacated. This Court has consistently ruled that compelled production of these types of evidence is constitutional under both the state and federal constitutions.

It is interesting to trace the chronology of the case law in the state of Oklahoma relating to the interpretation of this particular provision of our Constitution. In *Duckworth v. State,* 309 P.2d 1103, 1105 (Okl.Cr.1957), the Court stated that "because an intoximeter test was not taken, the rule against self-incrimination is not involved, herein." The Court then proceeded to apply the provisions of 22 O.S.1951, § 701 which it recognized as being merely a reiteration of the self-incriminatory provision of the Oklahoma Constitution, Article II, § 21. *Id.* at 1106, 1107. The majority opinion in *Duckworth* did not address the constitutional issue directly but dealt with the refusal evidence from the standpoint that it would be termed "a negative predi-

cate which was productive of nothing more than sheer speculation, surmise, and innuendo." The Court then stated that it has repeatedly held that no conviction based upon speculation, surmise, or innuendo will be sustained. Judge Powell in his dissent to *Duckworth* did address the constitutional issues and the appropriate interpretation of our constitutional provision. Judge Powell cited the following holding from *Ricketts v. State*, 23 Okl.Cr. 267, 215 P. 212 (1923):

> The constitutional provision guarantees no greater privilege than that all persons, whether parties or extraneous witnesses, shall be free from compulsion by legal process, to give self-incriminating testimony. The principal purpose of the provision was to prohibit compulsory examination of prisoners before trial or upon trial, for the purpose of extorting unwilling confessions or declarations implicating them in crime. It could reach further only in exceptional and peculiar cases coming within the purpose and spirit of the inhibition. (Emphasis added) 309 P.2d at 1107.

This interpretation is consistent with case law applying both our state and federal constitutions when the emphasis is placed upon the compelling of testimony.

*Engler v. State*, 316 P.2d 625 (Okl.Cr. 1957) addressed the issue of refusal to submit to a "sobriety test", and cited *Duckworth*. However, the opinion stated:

> Until their accuracy is more firmly established or legislative action is taken, a refusal to submit to such a test should not be permitted to work against the interest of the defendant. *Id.* at 627.

Thus, *Engler* laid the predicate, later reiterated in *McCullick v. State*, 682 P.2d 235 (Okl.Cr.1984), that the admissibility of a refusal to submit to a sobriety test must be resolved by the legislative branch.

The dissent urges that this Court return to the law enunciated in *Bailey v. City of Tulsa*, 491 P.2d 316 (Okl.Cr.1971) wherein the Court ruled that the Oklahoma constitutional prohibition against self-incrimina-tion is broader in scope than the corresponding Federal provision and is not limited to testimonial evidence. *Bailey* held:

> It is therefore settled in this jurisdiction that nontestimonial evidence such as a test of defendant's blood for intoxication falls within the scope of the self-incrimination prohibition. Thus the federal distinction between testimonial as opposed to real or physical evidence from accused is not decisive of the question before this Court. Rather, the issue is, if the Implied Consent Law compelled defendant to take the test and thus give evidence which will tend to incriminate him in violation of our Constitution. *Id.* at 318.

The *Bailey* Court determined that by taking the test, a defendant knowingly waives the self-incrimination privilege, thus the opportunity to elect refutes the claim of compulsion. In *Application of Baggett*, 531 P.2d 1011, 1020 (Okl.1974) the Supreme Court addressed *Bailey's* inconsistencies:

> While we find it unnecessary to hold that Oklahoma's view of the self-incrimination privilege is erroneous, it should be pointed out that we recognize the inconsistency of *Bailey, supra*. The *Bailey* rationale that the Oklahoma self-incrimination privilege is broader than the Federal is not only inconsistent with the Supreme Court's view in *Schmerber* [*v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed. 2d 908 (1966)] *supra*, but with that of other states having self-incrimination prohibitions identical in nature to Oklahoma. The *Bailey* opinion is even inconsistent with past holdings in this State, as will be demonstrated.

The *Baggett* Court then noted that this Court had required a defendant to submit fingerprint exemplars and handwriting specimens without violation of his right against self-incrimination, and that a breathalyzer test is similar in nature.

*Thomason*, which overruled *Bailey*, was the first case by this Court which addressed whether Oklahoma's constitutional provision is broader than the Federal provi-

sion. In *Thomason*, this Court dissected our constitutional provision, compared it with like constitutional provisions from other states, and concluded that it prohibits compelled testimonial evidence. The *Thomason* decision was reaffirmed in *Ross v. State*, 556 P.2d 638 (Okl.Cr.1976), wherein the Court admitted the results of a breathalyzer test and stated that there is no need to quote the Miranda warnings prior to administering the blood alcohol test. In *McCullick v. State*, 682 P.2d 235, 236 (Okl. Cr.1984) the Court denied the admissibility of a refusal to submit to a sobriety test, holding:

> A plain reading of Oklahoma's Implied Consent Law, 47 O.S.Supp.1983, §§ 751 et seq, demonstrates that the legislature granted an absolute right to one arrested for DUI to refuse to submit to a test to determine the alcohol content of his blood, although not without certain consequences attaching to said refusal. The only sanction provided, however, is revocation of the driver's license of one who refused to submit to a sobriety test. The admission or exclusion of such evidence is a proper matter to be resolved by the legislative branch of government within the framework of the constitution. (Emphasis added)

The *McCullick* Court determined that *South Dakota v. Neville*, 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983) was not applicable because Oklahoma had no state statute allowing the use of a refusal to take a test.

The issue of constitutionality of the amendments to the Oklahoma Implied Consent Law allowing admission of a refusal was finally presented to this Court in *State v. Neasbitt*, 735 P.2d 337 (Okl.Cr.1987) on a reserve question of law. The Court reaffirmed that:

> While it is true that at one point in time this Court held that our constitutional provision prohibiting compelled self-incrimination extended to nontestimonial evidence, see *Bailey v. City of Tulsa*, 491 P.2d 316 (Okl.Cr.1971), we have since retracted that ruling. *Id.*

The Court determined that admission of evidence of one's refusal to take a sobriety test "meets constitutional muster according to both the Oklahoma and the United States Constitutions." *Id.* at 338. The Court agreed with *Neville* that "[i]t is not an act coerced, and is not protected by the privilege against self-incrimination." *Id.*

Both *Neville* and *Neasbitt* state that the legislature may legitimately permit evidence of refusing the test to be introduced at trial as a penalty. *Neville* discusses this penalty as one which may be used as a statement against penal interest, i.e. "evidence of guilt". If this evidence is allowed as a statement against penal interest, then in reality it allows the State to prove what was described in *Duckworth* as "a negative predicate" and shifts the burden of proof to a defendant. 309 P.2d at 1105. This shifting should not be permitted. As stated in *Duckworth:*

> This Court has repeatedly held that no conviction based upon speculation, surmise, or innuendo will be sustained. *Slaton v. State*, 97 Okl.Cr. 12, 257 P.2d 330 [1953]; *Doty v. State*, 88 Okl.Cr. 381, 203 P.2d 444 [1949]; *Taylor v. State*, 36 Okl.Cr. 419, 255 P. 158 [1927]. *Id.*

Title 47 O.S.Supp.1984, § 756 does not address for what purpose evidence that a person has refused to submit to a sobriety test might be admissible. The refusal to take a test does not show whether or not the person arrested is legally intoxicated. Just as admissibility of character and impeachment evidence is for a limited purpose requiring a limiting instruction to be given to the jury, so should the admissibility of the refusal of a defendant to take a blood alcohol or breathalyzer test be limited. *Neville* recognized the analogy of this type of evidence to evidence of flight. 459 U.S. at 561, 103 S.Ct. at 921. We now require an instruction on flight that requires the State to meet its burden of proof. OUJI–CR 806. To be consistent and ensure that the burden of proof remains with the state, the following limiting instruction should be required:

Evidence has been introduced of the Defendant's refusal to take a test to determine the blood alcohol level in his/her body at the time of his/her arrest. You must determine if this refusal constitutes an inference of guilt.

To find that the Defendant's refusal constituted an inference of guilt you must find beyond a reasonable doubt that first, the Defendant refused the test; second, with a consciousness of guilt; and third, in order to avoid arrest or conviction of the crime with which he/she is now charged.

[Note: If Defendant has given evidence explaining acts then give the following: The Defendant has offered evidence explaining his/her acts. You must consider the evidence of the Defendant in determining if he/she refused the test due to a consciousness of guilt.]

If, after a consideration of all the evidence on this issue, you find that the Defendant refused the test with a consciousness of guilt and in order to avoid arrest or conviction, then this refusal is a circumstance which you should consider with all the other evidence in the case in determining the question of the Defendant's guilt or innocence. However, if you have a reasonable doubt that the Defendant refused the test due to a consciousness of guilt and to avoid arrest or conviction of the crime, then the refusal to take the test is not a factor for you to consider.

With this limiting instruction the burden of proof will not shift to the defendant and a conviction which might be based upon speculation, surmise, or innuendo as to the effect of the refusal will be precluded. The failure to give the limiting instruction in this case, however, does not constitute fundamental error requiring reversal.

The foregoing application of our constitutional provision regarding self-incrimination provides more certainty in the interpretation and application of the Constitution of this State. To adopt a concept that the Oklahoma Constitution could, under some circumstances, be interpreted to be broader in scope than the Federal Fifth Amendment leaves open selective interpretation of our Constitution. It would also bring into question the viability of previous decisions of this Court relating to certain types of compelled evidence which have been approved by the Court.

PARKS, Vice Presiding Judge, dissenting:

The majority today sounds the death knell to the proposition that article II, section 21 of the Oklahoma Constitution may, under some circumstances, grant an accused broader protection than the Fifth Amendment to the United States Constitution. The majority overrules prior cases to the contrary. Because I disagree with such a position under the limited circumstances of this case, I dissent.

Appellant argues that admission of his refusal to take a breathalyzer test violated his right against self-incrimination under article II, section 21 of the Oklahoma Constitution. I agree. Statutory provisions must yield to constitutional provisions. *Draper v. State*, 621 P.2d 1142, 1145 (Okla. 1980). To the limited extent that it makes the refusal to submit to an intoxication analysis admissible at trial in a criminal action, I would hold that 47 O.S.Supp.1984, § 756, violates article II, section 21 of the Oklahoma Constitution.

In *McCullick v. State*, 682 P.2d 235, 236 (Okla.Crim.App.1984), in reversing and remanding for a new trial, this Court unanimously reaffirmed its longstanding rule that the refusal to submit to a sobriety test was inadmissible in a criminal prosecution for driving under the influence of alcohol. *McCullick* relied upon prior cases and the 1983 version of 47 O.S.Supp.1983, § 753, which granted an absolute right to one arrested for DUI to refuse to submit to an alcohol test, with the attendant consequence of revocation of their driver's license. *Id.* *McCullick* further stated "the admission or exclusion of such evidence is a proper matter to be resolved by the legisla-

tive branch of government *within the framework of the constitution." Id.* (emphasis added) The Oklahoma Legislature responded to *McCullick* with several amendments.

Effective November 1, 1984, under 47 O.S.Supp.1984, § 756, evidence that a person has refused to submit to an intoxication analysis is admissible at trial in a criminal action arising out of acts alleged to have been committed by a person driving or in actual physical control of a motor vehicle while under the influence of an intoxicating substance. Section 753, which had previously granted an absolute right to refuse to submit to an intoxication analysis, was amended effective November 1, 1985, and granted a right of refusal "unless the investigating officer has probable cause to believe that the person under arrest, while intoxicated, has operated his motor vehicle in such a manner as to have caused the death or serious physical injury of any other person or persons. In such event, such test otherwise authorized by law may be made in the same manner as if a search warrant had been issued for such test or tests...." 47 O.S.Supp.1985, § 753.

### I.

In 1957, Judge John Brett held that a refusal to take an intoximeter test was inadmissible. *Duckworth v. State,* 309 P.2d 1103, 1105–06 (Okla.Crim.App.1957). Judge Brett's reasoning was based on the fact the defendant had a right to refuse to take the test:

> It ill behooves the courts to say you have a right to refuse to do something, which may prove beneficial or detrimental to you, and yet, notwithstanding your right so to do, we will permit your refusal to be shown and enable the state to destroy your right and achieve indirectly by innuendo what it was prevented by law from accomplishing directly. We can conceive of no greater inconsistency.

*Id.* at 1105. The *Duckworth* decision was followed in *Engler v. State,* 316 P.2d 625,

627 (Okla.Crim.App.1957), wherein Judge Nix wrote: "If the defendant voluntarily submits, the results may be introduced as evidence, *but to refuse is within his constitutional rights* and jurors would not be permitted to speculate by presumption or suspicion as to why he refused...." (emphasis added). In 1971, Judge Tom Brett held "the Oklahoma Constitutional prohibition against self-incrimination is broader in scope than the federal ... [provision]...." *Bailey v. City of Tulsa,* 491 P.2d 316, 318 (Okla.Crim.App.1971). In 1973, a unanimous court, including Judge Bussey, reaffirmed the principle that Oklahoma's constitutional privilege against self-incrimination "goes further than the analagous provision of the Fifth Amendment to the Federal Constitution...." *Synnott v. State,* 515 P.2d 1154, 1155 (Okla.Crim.App.1973).

Then in 1975, in an opinion written by Judge Bussey and concurred in by Judge Bliss, the Court reversed its prior position by holding that "the particular phraseology contained within our constitutional provision upon self-incrimination is simply declaratory of the common law and does not grant broader protection than that embodied within the Fifth Amendment to the Federal Constitution. Those cases so indicating to the contrary are hereby overruled." *State v. Thomason,* 538 P.2d 1080, 1086 (Okla.Crim.App.1975). *See also Shelton v. State,* 583 P.2d 1107, 1110 (Okla. Crim.App.1978); *Ross v. State,* 556 P.2d 638, 640 (Okla.Crim.App.1976). Most recently, in *State v. Neasbitt,* 735 P.2d 337, 338 (Okla.Crim.App.1987), the Court followed the rationale of *Thomason* and held that 47 O.S.Supp.1984, § 756, which permits admission at trial of an accused's refusal to submit to a sobriety test, did not violate article II, section 21. However, for the following reasons, I believe *Neasbitt* was wrongly decided.

### II.

I believe the rationale expressed in *Bailey v. City of Tulsa,* 491 P.2d 316, 317–19 (Okla.Crim.App.1971), to the extent it rec-

ognized that article II, section 21 of the Oklahoma Constitution could, under some circumstances, be broader in scope than the Fifth Amendment of the Federal Constitution, best represents the approach contemplated by the framers of article II, section 21. I would emphasize that my opinion is limited to the admission of a *refusal to submit* to an intoxication analysis. The sole purpose for admitting such a refusal is to allow the jury to infer guilt. Clearly, a refusal to submit to an intoxication analysis is not in itself probative of guilt or innocence but, as already pointed out in *Duckworth* and *Engler*, amounts to nothing more than conjecture, innuendo, or suspicion. For these reasons, I believe article II, section 21 of the Oklahoma Constitution is sufficiently broader than the Fifth Amendment to the United States Constitution so as to prohibit the use of an accused's refusal to submit to an intoxication test as evidence against him at trial. *See Engler,* 316 P.2d at 627; *Duckworth,* 309 P.2d at 1105–06. *See also Jackson v. State,* 397 P.2d 920, 923 (Okla.Crim.App. 1965).

Such a holding is supported by a comparison of the Oklahoma and Federal self-incrimination provisions. "No person shall be compelled to give *evidence* which will tend to incriminate him, except as in this Constitution specifically provided...." *Okla. Const.* art. II, § 21 (emphasis added). "No person ... shall be compelled in any criminal case to be a *witness* against himself...." *U.S. Const.* amend. V (emphasis added). Significantly, the Oklahoma Constitution prohibits compelled incriminating "evidence" while the United States Constitution prohibits a person from being compelled to be a "witness" against himself. An examination of the language originally proposed, and later rejected at the Oklahoma Constitutional Convention, strongly suggests that the framers of the Oklahoma Constitution intended article II, section 21, to be broader in scope than its federal counterpart, the Fifth Amendment to the United States Constitution:

At the Oklahoma Constitutional Convention, there were two substantially dif-

ferent proposals made as to how Oklahoma's self-incrimination provision should be phrased:

(1) Resolution 54: "... no person shall be compelled to testify against himself in a criminal cause...."

(2) Proposition 79: "... nor be compelled in any criminal case to be a witness against himself."

Yet, when the Committee on Preamble and Bill of Rights reported, neither proposal was used. Rather, the Committee had adopted different language which read, "No person shall be compelled to give evidence which will tend to criminate [sic] him." Why the Committee rejected the proposed language and adopted a different phraseology will probably never be known, for no minutes of the Committee's meetings are known to exist. *However, since the literal meaning of the language chosen is broader in scope than the rejected language, it is at least arguable that the intent of the Oklahoma Constitutional Convention was to provide a broad protection against self-incrimination which would encompass more than testimonial evidence.* (footnotes omitted) (emphasis added)

Note, *Criminal Law: Nontestimonial Aspect of Oklahoma's Right Against Self–Incrimination,* 28 Okla.L.Rev. 122, 123–25 (1975). I agree that it

is illogical to suggest that the twentieth-century drafters of article II, section 21, who chose to use different language than that afforded by the eighteenth-century federal fifth amendment, meant to protect exactly the same rights to the same extent. If that was the intent, any language other than the federal language would be dangerous. A different, more protective intent would seem to be evidenced in the Oklahoma constitution.

M. Miller, *Oklahoma's Constitutional Right Against Self–Incrimination and the Introduction Into Evidence of the Refusal to Take a Sobriety Test,* 37 Okla.L. Rev. 245, 252 (1984). The rationale in *Tho-*

*mason,* 538 P.2d at 1081–86, is not persuasive, as a careful review shows that it was based solely on the origin and history of the Fifth Amendment to the United States Constitution, and thus reflected current understanding of the Federal Fifth Amendment and not article II, section 21 of the Oklahoma Constitution. *See Miller, supra,* at 258. Prior Oklahoma case law and the deliberate change in phraseology of article II, section 21 of the Oklahoma Constitution, which is at variance with the language of the Fifth Amendment to the United States Constitution, support the conclusion that the Oklahoma provision is, under some circumstances, broader in scope than the federal provision. *Id.* at 258–59. In effect, the Court today "amends" article II, section 21 of the Oklahoma Constitution to conform it to the Fifth Amendment to the United States Constitution. Such "amendments" should not be made by this Court, but should be properly submitted to the citizens of the State of Oklahoma for approval or rejection.

I fully realize that under the United States Supreme Court's decision in *South Dakota v. Neville,* 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983), the same result would not obtain under the fifth amendment. But the *Neville* case is not, and should not be, determinative of the constitutional rights of Oklahoma citizens under article II, section 21 of the Oklahoma Constitution. This Court unanimously recognized in *McCullick,* 682 P.2d at 236, that *Neville* did not change Oklahoma law. A state court decision clearly and expressly resting on bona fide separate, adequate, and independent state grounds is not subject to federal review. *Michigan v. Long,* 463 U.S. 1032, 1041, 103 S.Ct. 3469, 3476, 77 L.Ed.2d 1201 (1983). As was aptly stated by Justice Kauger in *Turner v. City of Lawton,* 733 P.2d 375, 378–79 (Okla.1986), *cert. denied,* 483 U.S. 1007, 107 S.Ct. 3232, 97 L.Ed.2d 738 (1987):

The Constitution of the State of Oklahoma contains independent sources of rights and liberties, which may, under some circumstances, offer more protection than the federal constitution. The Oklahoma Constitution does not merely project a mirror image of the federal constitution. The people of this state are governed by the Oklahoma Constitution, and when it grants a right or provides a principle of law or procedure beyond the protections supplied by the federal constitution, it speaks for every person as the supreme law and the final authority for everything which is done in pursuance of its provisions. (footnote omitted)

Accordingly, article II, section 21 of the Oklahoma Constitution constitutes a bona fide, separate, adequate, and independent state ground upon which I would rest the holding that, absent a valid waiver, the admission of appellant's refusal to take a breathalyzer test violated his state constitutional right against self-incrimination. *Id.* at 381. *See Michigan v. Long,* 463 U.S. at 1041, 103 S.Ct. at 3476.

For all of the foregoing reasons, I dissent.